# United States Court of Appeals
### For the Eighth Circuit

_____

No. 13-2510

_____

United States of America

*Plaintiff - Appellee*

v.

Frank G. Rendon

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: March 13, 2014
Filed: May 22, 2014

_____

Before WOLLMAN, MURPHY, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

Frank Rendon pled guilty to conspiracy to distribute 500 grams or more of a mixture containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1), and 846. After reaching a plea agreement with the government, Rendon wrote letters to the district court in which he denied having distributed 500 grams or more and

asked to be convicted for a lower amount. At sentencing the district court[1] denied Rendon an acceptance of responsibility reduction and sentenced him to 360 months imprisonment. Rendon appeals, arguing that the prosecution breached the plea agreement by failing to move for a three level reduction for acceptance of responsibility and by agreeing with the district court's calculation of a drug quantity amount higher than in the plea agreement. We affirm.

I.

Frank Rendon was arrested on September 18, 2007, after officers responded to a call that gunshots were heard at his Missouri home. A search of the house revealed methamphetamine, distribution paraphernalia, and a rifle. In the ensuing investigation officers learned that Rendon was involved in a conspiracy to distribute methamphetamine in which he and at least three coconspirators sold the drug out of Rendon's house.

Rendon reached a plea agreement with the government under which he pled guilty and admitted to the fact that "he was involved in the distribution of at least 500 grams of methamphetamine." In the agreement the government stated that it "believes the applicable Guidelines section . . . provides for a base offense level of 36," while Rendon stated that he "believes the applicable Guidelines section . . . provides for a base offense level of 32." The plea agreement also provided that the government would seek a three level reduction for Rendon's acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. The government was to file a motion seeking this reduction at sentencing unless Rendon failed to abide by the terms of the plea agreement, attempted to withdraw his guilty plea, "or otherwise engage[d] in conduct inconsistent with his acceptance of responsibility." The plea agreement also

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

stated that the parties' estimates with respect to the guideline computation did not bind the district court or the probation office. Under paragraph 19 of the agreement, the government would be released from its obligations if, among other things, Rendon "violate[d] any term of this plea agreement between the signing of this plea agreement and the date of sentencing," or if he "provide[d] information to the Probation Office or the Court that [wa]s intentionally misleading, incomplete, or untruthful, or otherwise breach[ing] this plea agreement."

After signing the agreement but before sentencing, Rendon wrote two letters which he sent to the district court. In his second letter he claimed that another defendant had been charged with a quantity of 50 to 200 grams, and that "[t]he Prosecution is adding these large amounts of drugs that never excisted [sic] and have been made up by these co-defendants." He also wrote "I accept responsibility for any wrong doing that has solid evidence against me," but added "I pleaded guilty to this plea agreement under fear and intimidation of doing alot [sic] of time . . . there was never no 500 or more grams of drug[.] I'm asking that you please find me guilty of 50 to 200 grams like all my other co-defendants." He also asked to be separated from the conspiracy.

The presentence investigation report (PSR) calculated over 300 pounds (136.08 kilograms) of methamphetamine to be the quantity reasonably foreseeable to Rendon which led to a base offense level of 38. It also recommended applying a two level enhancement for possession of a dangerous weapon.

At sentencing the district court acknowledged it had received two letters from Rendon and explained that in the letters "Mr. Rendon takes the position that he did not in fact commit the crime that he pled guilty to." The court indicated it would deny credit for acceptance of responsibility on the basis of these letters. Rendon's counsel informed the court that she had not seen the letters Rendon had sent, but she argued that under the plea agreement Rendon retained the ability to challenge the

drug quantity attributed to him. After the court provided counsel with the letters, however, she stated that she "was not aware that Mr. Rendon had written these letters to this extent to the Court. So I accept that and your position on the guidelines." The court then asked the government if it took a position inconsistent with the court's position on acceptance of responsibility, and the government replied that it did not.

After Rendon objected to various aspects of the presentence investigation report, the government produced four witnesses who testified to Rendon's involvement in the conspiracy and the quantity of drugs sold by the conspiracy. The district court asked for the government's position on drug quantity, and the government stated that the quantity was "in the ballpark of at least 30 pounds of meth." The district court responded "I agree with you there and if you're not seeking to support the 300-pound estimate." The government confirmed that it was not. The district court proceeded to overrule Rendon's objection to the PSR calculation of a base offense level of 38, stating "I believe the evidence supports the base offense level as calculated under the presentence report." The court added a two level enhancement for possessing a dangerous weapon, resulting in a total offense level of 40, and then asked the government if it agreed with the court's calculation. The government replied that it did. With this total offense level of 40 and a criminal history category of III, Rendon's guideline range was determined to be 360 months to life. The court sentenced Rendon to 360 months.

Rendon now appeals, arguing that the government breached the plea agreement by failing to move the district court for a three level reduction for acceptance of responsibility and by agreeing to a base offense level of 38 when the plea agreement specified a level of 36.

II.

Rendon contends that the government breached the plea agreement when it did not request a three level reduction for acceptance of responsibility. We review for plain error because Rendon did not make this objection at sentencing. United States v. Birdhorse, 701 F.3d 548, 551 (8th Cir. 2012). To obtain relief Rendon must show a "clear or obvious" error which affects his "substantive rights," and we will only exercise our discretion to correct this error if not doing so would "undermine the fairness, integrity, or public reputation of judicial proceedings." United States v. Martin, 583 F.3d 1068, 1074 (8th Cir. 2009).

Under the plea agreement in Martin the government agreed to request a reduction for acceptance of responsibility unless it were to learn of information before sentencing which was "inconsistent with the defendant's acceptance of responsibility." Id. at 1071, 1074 (internal quotation marks omitted). After entering into this agreement, the defendant made statements in jail in which he denied responsibility for the crimes to which he had pled. Id. at 1071–72. On that record we concluded that the government had not breached its plea agreement by not requesting a reduction and that there had been no plain error. Id. at 1074–75.

We also see no plain error in this case. As in Martin, Rendon's plea agreement contained only a conditional obligation for the government to request a sentencing reduction, contingent on Rendon not "engag[ing] in conduct inconsistent with his acceptance of responsibility." See id. at 1071. In his letters to the district court, Rendon asked to be viewed apart from the conspiracy and to be found guilty for an offense involving only 50 to 200 grams, rather than the 500 or more grams to which he had pled. We conclude that Rendon's attempt to separate himself from the conspiracy released the government from its obligation to request a reduction for acceptance of responsibility. The government did not breach the plea agreement.

-5-

Rendon argues that the record contains no evidence that the government saw the letters he authored, but the district court informed the parties at sentencing that it had received the letters and that in the letters Rendon had taken "the position that he did not in fact commit the crime that he pled guilty to." This statement by the district court revealed that Rendon had acted in a manner inconsistent with his accepting responsibility, and the government was entitled to rely on that information.

III.

Rendon also asserts that the government breached the plea agreement by agreeing at sentencing to a base offense level of 38. The plea agreement had reflected the government's belief that the appropriate offense level was 36 and Rendon's own view that the correct level was 32. Since Rendon did not object to this alleged breach of the plea agreement at sentencing, our review is now for plain error. United States v. Lara, 690 F.3d 1079, 1081 (8th Cir. 2012). Plea agreements are essentially contracts and "should be interpreted according to general contract principles." United States v. Dewitt, 366 F.3d 667, 669 (8th Cir. 2004). If a plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971).

Rendon likens his case to those in which our court has concluded that the government breached plea agreements by presenting evidence of higher drug quantities than identified in the agreement. See Lara, 690 F.3d at 1083; Dewitt, 366 F.3d at 669–70. It is far from plain that the district court erred by failing to hold the government to its obligations under the agreement, because Rendon likely breached the plea agreement prior to sentencing. See United States v. Britt, 917 F.2d 353, 359 (8th Cir. 1990) ("[The defendant's] attempt to use contract principles of fairness and equity to enforce the government's obligations under his plea agreement fails because [the defendant] himself is the breaching party."). The plea agreement stated Rendon's

-6-

position that he was responsible for at least 500 grams of methamphetamine, an amount which required a base offense level of 32. U.S.S.G. § 2D1.1(c)(4). In his letter to the district court Rendon nevertheless denied that he had been involved with more than 500 grams of methamphetamine and asked the court to "please find [him] guilty of 50 to 200 grams." The latter quantity would equate to a base offense level of 26. U.S.S.G. § 2D1.1(c)(7).

By requesting a base offense level of 26 in his letter, Rendon may have breached the plea agreement. Since paragraph 19 of the agreement provided that the government would be released from its obligations in the event of a breach by Rendon, it is not clear under the terms of the agreement that the government was still bound at sentencing by its earlier statement that the appropriate base offense level had been 36. Although the government typically files a motion asking the district court to find the defendant in breach of a plea agreement before it is released from its obligations, the government did not do so here. See Britt, 917 F.2d at 356; see also United States v. Lezine, 166 F.3d 895, 901 (7th Cir. 1999) ("The Government . . . cannot unilaterally determine that a defendant has breached a plea agreement. When the prosecution seeks to escape an obligation under a plea agreement on the grounds that the defendant has failed to meet some precondition, the defendant is entitled to an evidentiary hearing.") (citation omitted).

Since Rendon cannot show that he was prejudiced by the governmnet's actions, we need not decide whether Rendon breached the agreement and released the government of its obligations. To obtain reversal on plain error review Rendon must demonstrate that the plain error affected his substantial rights, meaning he must show "a reasonable probability that the district court would have imposed a lesser sentence had the government" not breached the agreement. United States v. Jensen, 423 F.3d 851, 855 (8th Cir. 2005). The sequence of events in this case prevents Rendon from showing he was prejudiced by the government's actions.

At sentencing the government argued Rendon was responsible for at least 30 pounds, and it did not argue for the higher PSR quantity of 300 pounds. The cutoff between the base offense levels of 36 and 38 occurs at 15 kilograms of methamphetamine, which is an amount slightly over 33 pounds. U.S.S.G. §§ 2D1.1(c)(1), 2D1.1(c)(2). Thus, in arguing for a drug quantity of at least 30 pounds the government was not inconsistent with its level 36 estimate in the plea agreement. After sustaining Rendon's objection to a 300 pound quantity but denying his objection to at least 30 pounds, the district court made a finding that the evidence supported the PSR calculation of a base offense level of 38 and denied Rendon's objection to it. The court made this finding before the government took any action allegedly in breach of the agreement; only afterwards did the court ask if the government agreed with its calculation of a total offense of 40 (a base offense level of 38 and a two level enhancement for possession of a dangerous weapon.) Since the district court made its finding as to the base offense level before any alleged breach occurred, Rendon has not established that it would have imposed a different sentence had the government acted differently. See Jensen, 423 F.3d at 854–55.

In his letters to the district court, Rendon denied responsibility for participating in a conspiracy to distribute 500 grams or more of methamphetamine and argued for a drug quantity finding of 50 to 200 grams, an amount significantly lower than the one he had agreed to in his plea agreement. By writing these letters, Rendon exhibited conduct inconsistent with acceptance of responsibility and potentially in breach of his plea agreement. Moreover, Rendon has not demonstrated that he was prejudiced by the government's having agreed to the district court's finding of a base offense level higher than that contained in Rendon's plea agreement. On the record made here, the district court did not plainly err in its findings and allocation of responsibility.

-8-

IV.

The judgment of the district court is affirmed.

_____