**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, <br><br> v. <br><br> RAMIRO PLASCENCIA-OROZCO, AKA Alberto Jose Del Muro, AKA Alberto Jose Muro-Guerrero, *Defendant-Appellant.* | No. 15-50143 <br><br> D.C. No. 3:11-cr-03627-JAH-1 |

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee*,

v.

RAMIRO PLASCENCIA-OROZCO,
          *Defendant-Appellant.*

No. 15-50238

D.C. No.
3:08-cr-00139-
BEN-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued and Submitted December 8, 2016
Pasadena, California

Filed March 29, 2017

Before:  Consuelo M. Callahan, Carlos T. Bea,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Bea

# SUMMARY[*]

## Criminal Law

The panel affirmed the defendant's conviction and sentence for aggravated identity theft and attempted illegal reentry, and vacated the district court's order directing the defendant to use his true legal name.

The panel held that the district court did not abuse its discretion by denying the defendant's request for a fourth attorney.

The panel held that the district court did not abuse its discretion by ruling that the defendant breached the terms of his 2008 plea agreement when he attempted to reenter the United States unlawfully in 2011. The panel held that the district court, which ruled on the breach at a motions-in-limine hearing, did not abuse its discretion by refusing to submit the issue of a breach to a jury or by allowing the government to reindict the defendant on the 2008 charges without first seeking a judicial finding of breach. The panel explained that the proper way for a defendant to raise a prior plea agreement as a defense to a criminal charge is to move to dismiss that charge under Federal Rule of Criminal Procedure 12(b). The panel held that the district court did not err by failing to hold an evidentiary hearing *sua sponte*.

The panel held that the district court did not commit errors that cumulatively rendered the defendant's trial

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

fundamentally unfair. The panel held that the district court did not abuse its discretion by admitting a Mexican birth certificate that the government claimed belonged to the defendant, that the district court did not err by failing to hold a hearing on potential jury bias, that the district court did not abuse its discretion by allowing the government to elicit testimony about testimony in unrelated prior proceedings, and that the district court did not plainly err by allowing the government to question the defendant about a witness's credibility.

The panel held that the district court did not abuse its discretion by sentencing the defendant to 184 months' imprisonment.

The panel agreed with the parties that the district court lacked the authority to issue a freestanding order directing the defendant to use his true legal name.

## COUNSEL

Robert L. Swain (argued), San Diego, California, for Defendant-Appellant.

Daniel E. Zipp (argued), Assistant United States Attorney; Helen H. Hong, Chief, Appellate Section, Criminal Division; Laura E. Duffy, United States Attorney; United States Attorney's Office, San Diego; California, for Plaintiff-Appellee.

## OPINION

BEA, Circuit Judge:

We seldom run into a "frequent flyer" as "frequent" as appellant. Over his 46-year career as an illegal entrant, he has been deported or removed dozens of times. But what makes him stand out as a "cara dura"[1] is not only that on some of these entries, he used the name and stolen documents of an innocent father of five, but that he now testifies before the wife and mother that he actually fathered two of the innocent's children. Despite the numerous grounds he now urges on appeal, we affirm.

## I. Background

The appellant, Ramiro Plascencia-Orozco ("Plascencia"),[2] is a citizen and national of Mexico. He was first removed from the United States by immigration authorities in 1971, after he was arrested for entering the country without inspection or authorization. Between 1971 and 2011, Plascencia was similarly removed from the United States at least twenty more times and was convicted of at least eleven separate immigration offenses. In 1986 or 1987, Plascencia stole identification documents, including a birth certificate, from a United States citizen named Alberto Jose Del Muro Guerrero. Plascencia attempted to enter the United

---

[1] A Spanish term roughly equivalent to "chutzpah."

[2] The defendant-appellant's name is one of the disputed issues on this appeal. Although the government contends that the defendant-appellant's name is Ramiro Plascencia-Orozco, the defendant-appellant maintains that his name is Alberto Del Muro-Guerrero. Because we ultimately affirm Plascencia's conviction and sentence, we shall refer to the defendant-appellant as "Plascencia."

States using Del Muro's birth certificate on several occasions, including in January 2008 and August 2011. Plascencia's 2008 and 2011 entry attempts are the subject of this appeal.

### A.  Plascencia's 2008 Entry Attempt

In January 2008, Plascencia attempted to enter the United States at the Calexico Port of Entry in California. When asked for identification, Plascencia presented Del Muro's birth certificate. U.S. Customs and Border Protection officers then searched Plascencia's car and found over one hundred kilograms of marijuana hidden inside. Plascencia was arrested and charged with (1) importation of marijuana into the United States, 21 U.S.C. §§ 952, 960; (2) possession of marijuana with intent to distribute, 21 U.S.C. § 841(a)(1); (3) attempted illegal reentry, 8 U.S.C. § 1326; and (4) aggravated identity theft, 18 U.S.C. § 1028A.

Plascencia pleaded guilty to the importation-of-marijuana charge, and in exchange, the government dismissed the remaining charges against him and promised "not [to] prosecute [Plascencia] thereafter on such dismissed charges unless [he] breaches the plea agreement . . . or [he] unlawfully returns to the United States during the term of supervised release." Plascencia was sentenced to 46 months' imprisonment and three years' supervised release. In June 2011, when he finished serving his prison sentence, Plascencia was removed from the United States by immigration authorities and prohibited from "being in the United States . . . at any time."

## B. Plascencia's 2011 Entry Attempt

In August 2011, less than two months after his removal, Plascencia again attempted to enter the United States using Del Muro's birth certificate. This time, Plascencia presented himself at the San Ysidro Port of Entry in California. An immigration officer ran a computer search on Del Muro's birth certificate and learned that its owner had been "permanently banned" from the United States. Plascencia was taken into custody and later indicted on four charges: two counts of aggravated identity theft, 18 U.S.C. § 1028A, and two counts of attempted illegal reentry, 8 U.S.C. § 1326. One set of identity-theft and illegal-reentry charges arose out of Plascencia's August 2011 entry attempt; the other was revived from his 2008 entry attempt on the theory that Plascencia had breached his plea agreement by "unlawfully return[ing] to the United States" in 2011.

Plascencia's trial was held in August 2014 before Judge John Houston of the U.S. District Court for the Southern District of California. The government put on testimony from Alberto Del Muro, Del Muro's wife, Matilde, and multiple law enforcement officers, including the officers who stopped Plascencia as he was attempting to enter the United States in 2008 and 2011. Plascencia testified in his own defense but called no other witnesses. The jury returned a verdict of guilty on all counts, and the court sentenced Plascencia to 184 months' imprisonment followed by three years' supervised release. Plascencia timely filed this appeal, in which he alleges errors in his pretrial proceedings, trial, and sentencing.[3]

---

[3] Initially, this appeal was consolidated with an appeal from the trial of the 2008 attempted entry, in which Plascencia was convicted of

## II. Standard of Review

A district court's denial of a criminal defendant's request for a new attorney is reviewed for abuse of discretion. *United States v. Lindsey*, 634 F.3d 541, 554 (9th Cir. 2011). So are a district court's evidentiary rulings, *see United States v. Lozano*, 623 F.3d 1055, 1059 (9th Cir. 2010); its decision whether to conduct an evidentiary hearing on potential juror bias, *Estrada v. Scribner*, 512 F.3d 1227, 1235 (9th Cir. 2008); and the sentence that it imposes, *Gall v. United States*, 552 U.S. 38, 52 (2007).

Ninth Circuit case law is less clear as to the standard of review that applies to a district court's interpretation of a plea agreement. *See United States v. Transfiguracion*, 442 F.3d 1222, 1227 (9th Cir. 2006). Some authority maintains that "[t]he district court's interpretation and construction of a plea agreement is reviewed for clear error." *United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000);

---

importing marijuana and sentenced to 46 months' imprisonment followed by three years' supervised release. In 2015, the district judge in those proceedings, Judge Roger Benitez, found that Plascencia's 2011 entry attempt and subsequent conviction before Judge Houston violated a condition of Plascencia's supervised release. For this violation, Judge Benitez sentenced Plascencia to 36 months' imprisonment, to run concurrently with Plascencia's existing 184-month sentence. Plascencia appealed this sentence also, and the two appeals were consolidated here.

At oral argument, however, Plascencia conceded that his appeal of the 36-month sentence imposed by Judge Benitez is now moot, because Plascencia has already served that sentence. *See United States v. Palomba*, 182 F.3d 1121, 1123 (9th Cir. 1999) (a defendant's challenge to an already-served sentence is moot unless the defendant alleges "collateral consequences . . . in any possible future sentencing" (internal citations and quotation marks omitted)). We agree, and we therefore do not address the 36-month sentence on this appeal.

*see also United States v. Floyd*, 1 F.3d 867, 869 (9th Cir. 1993). Other authority maintains that "[w]e review a district court's interpretation of the terms of a plea agreement *de novo*," but "[w]e consider whether the facts demonstrate that there was a breach of a plea agreement under the more deferential clearly erroneous standard of review." *United States v. Salemo*, 81 F.3d 1453, 1460 (9th Cir. 1996). We need not resolve this conflict here, however, because we agree with the district court's interpretation of the plea agreement "[e]ven under the less deferential de novo standard of review." *Transfiguracion*, 442 F.3d at 1227; *see also United States v. Franco-Lopez*, 312 F.3d 984, 988 (9th Cir. 2002).

Even if a district court rules erroneously at a criminal defendant's trial, that error does not necessarily warrant reversal on appeal. If the defendant objects to the erroneous ruling, this Court reviews for "harmless error." Fed. R. Crim. P. 52(a). An error is harmless if it "does not affect substantial rights." *Id.* "An error affects 'substantial rights' if the defendant is prejudiced in such a manner as to 'affect the outcome of the district court proceedings.'" *United States v. Mitchell*, 568 F.3d 1147, 1150 (9th Cir. 2009) (internal alterations omitted) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).

By contrast, where the defendant fails to object to a district court's erroneous ruling, that ruling is reviewed for "plain error." Fed. R. Crim. P. 52(b). Plain error exists only if "(1) there was error; (2) the error committed was plain; (3) the error affected substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzalez-Aparicio*, 663 F.3d 419, 428 (2011). On plain error review, "[i]t is the defendant rather than the [g]overnment who bears

the burden of persuasion with respect to prejudice." *Olano*, 507 U.S. at 734.

## III. Discussion

### A. The District Court Did Not Abuse Its Discretion by Denying Plascencia's Third Request for New Counsel.

Initially, the district court appointed Leila Morgan of the Federal Defenders of San Diego, Inc., as Plascencia's attorney. Morgan requested a competency hearing for Plascencia. At that hearing, she told the court during a sidebar that "[Plascencia] has a substantial delusion that he is an individual [Del Muro] who the government believes he is not." As a result, Morgan explained, Plascencia could not "effectively communicate [with her] and help [her] with his defense." After the sidebar, Plascencia asked the court to appoint a new attorney, claiming that Morgan was "ineffective" and that "there [was] a conflict of interest." The court deferred its decision on Plascencia's request until the results of Plascencia's competency evaluation were available. In August 2012, while awaiting his competency hearing, Plascencia filed a complaint against Morgan with the California Bar Association, and the district court granted Morgan's request to withdraw from the representation.[4]

The district court then appointed a second attorney, Merle Schneidewind. At a December 2012 status hearing, Schneidewind told the court that Plascencia had filed a state bar complaint against him as well. Plascencia did so after Schneidewind had refused Plascencia's demands for money, which Schneidewind characterized as "basically extortion."

---

[4] Plascencia was eventually found competent to stand trial.

Plascencia then told the district court he wanted a new attorney. The court initially denied Plascencia's request, but in April 2013, Schneidewind told the court that the California Bar Association had informed him that "although [he was] not required to recuse [himself]" from the case, doing so was likely "the more prudent course of action." The court agreed and appointed Plascencia a third attorney, Robert Carriedo.

Plascencia filed state bar complaints against Carriedo as well, and on August 13, 2014, he again asked the court to appoint him a new lawyer.[5] The court asked Plascencia why he wanted new counsel, and he told the court that Carriedo had failed to procure transcripts from prior proceedings in which immigration authorities had purportedly determined that Plascencia was in fact a United States citizen. Carriedo explained that he had gathered all the documents from the relevant proceedings, but that none of them demonstrated that Plascencia was a United States citizen. Plascencia also complained that Carriedo had failed to procure certain witnesses who knew Plascencia "about 20 years ago." According to Carriedo, those witnesses either were dead, could not be found, or were in Mexico and unwilling to testify. The court denied Plascencia's request to replace Carriedo at the August 13 hearing. Plascencia renewed his request on August 19, the day his trial was scheduled to begin, and again on August 20, the day the first witness was

---

[5] Initially, Plascencia asked to represent himself, but after some dialogue, he told the court that he wanted a new lawyer. ("The Court: Do you want to represent yourself or not? The Defendant: No, no, no. . . The Court: The court finds that the defendant has explicitly stated that he does not care to represent himself.").

scheduled to take the stand. The court denied his request both times.

A district court's denial of a criminal defendant's request for a new attorney is reviewed for abuse of discretion. *Lindsey*, 634 F.3d at 554. This Court considers three factors when determining whether a district court abused its discretion: "1) the timeliness of the motion; 2) the adequacy of the district court's inquiry into the defendant's complaint; and 3) whether the asserted conflict was so great as to result in a complete breakdown in communication and a consequent inability to present a defense." *United States v. Prime*, 431 F.3d 1147, 1154 (9th Cir. 2004).

Here, all three factors support the district court's ruling. Plascencia requested a replacement for Carriedo on August 13 (six days before trial was scheduled to begin), August 19 (the day the court empaneled a jury), and August 20 (the day the first witnesses were heard). Thus, none of his three requests were timely. *Cf. Prime*, 431 F.3d at 1155 (request made ten days before trial untimely); *United States v. Garcia*, 924 F.2d 925, 926 (9th Cir. 1991) (request made six days before trial untimely). The district court repeatedly inquired into Plascencia's reasons for wanting a new attorney, and determined that those reasons were unfounded.[6] Instead, the court found, Carriedo had engaged in "competent efforts to . . . represent [Plascencia,]" despite Plascencia's "efforts to stonewall [Carriedo's] efforts with frivolous complaints." Moreover, although Plascencia's attorneys told the court that communicating with Plascencia was difficult, there was not a "complete breakdown and a

---

[6] Again, these reasons included Carriedo's failure to procure certain documents and locate certain witnesses from Plascencia's prior immigration proceedings.

consequent inability to present a defense," because Plascencia ultimately testified in his *own* defense. For these reasons, and because the record supports the district court's finding that Plascencia's requests were dilatory tactics rather than genuine complaints about his attorneys' performance, we conclude that the district court did not abuse its discretion by denying Plascencia's request for a fourth attorney.

### B. The District Court Did Not Abuse Its Discretion by Ruling that Plascencia Had Breached the Terms of His Plea Agreement.

Plascencia's 2008 plea agreement provided that the government would "not prosecute" Plascencia on the illegal-reentry, identity-theft, and possession-of-marijuana charges arising out of his 2008 entry attempt unless Plascencia "breach[ed] the plea agreement" or "unlawfully return[ed] to the United States during the term of supervised release." In the event of a breach, the agreement provided, "the [g]overment may pursue any charges including those that were dismissed, promised to be dismissed, or not filed as a result of this agreement."

In August 2014, at a pretrial hearing on the parties' motions in limine, the government asked the district court to rule that Plascencia had breached the terms of his 2008 plea agreement by attempting to reenter the United States unlawfully in 2011. To reinstate the charges, the government argued, it needed to prove only that Plascencia had breached the agreement by a "preponderance of the evidence." The government contended that the grand jury's "finding that there is probable cause to believe that [Plascencia unlawfully

reentered the United States in August 2011]" was sufficient to support such a finding.[7]

Plascencia argued that the issue of breach should be submitted to the jury, because the conduct giving rise to the claimed breach—Plascencia's 2008 entry attempt—was the same conduct underlying the reinstated illegal-reentry charge. The district court rejected this argument, holding instead that whether Plascencia had breached his plea agreement was "a legal issue for [the] court to decide." The court found that "there [was] evidence presented to a preponderance of the evidence" that Plascencia had breached the agreement, and it allowed the government to proceed on the 2008 charges. On appeal, Plascencia challenges this ruling on three grounds.

1.  **The District Court Did Not Err by Concluding that Plascencia Had Breached His Plea Agreement by "Unlawfully Return[ing]" to the United States.**

First, Plascencia argues that because he was convicted only of *attempted* illegal reentry in violation of 8 U.S.C. § 1326, he only *attempted* "[to] return[] [unlawfully] to the United States" and therefore did not breach the literal terms of his plea agreement. Because Plascencia did not raise his argument in the proceedings below, we review the district

---

[7] We note that on this appeal, Plascencia does not challenge the *sufficiency* of the evidence of breach of the 2008 plea agreement presented by the government at the motions-in-limine hearing. We therefore do not review the district court's ruling that the government's evidence here established Plascencia's breach by a preponderance of the evidence.

court's contrary ruling for plain error.**[8]** We conclude that the district court did not err, let alone plainly err, by concluding that Plascencia had breached his plea agreement by "unlawfully return[ing]" to the United States.

Because "plea agreements are contractual in nature," we measure them "by contract law standards." *Clark*, 218 F.3d at 1095(internal citations and alterations omitted). In construing a plea agreement, we proceed in three steps: First, we ask whether "the terms of the plea agreement on their face have a clear and unambiguous meaning." *Id.* If they do, then we "will not look to extrinsic evidence to determine their meaning." *Id.* If not, then we turn to "the facts of the case to determine what the parties reasonably understood to be the terms of the agreement." *Id.* Finally, if ambiguities still remain, we construe those ambiguities against the government. *Id.*

As an initial matter, we note again that nothing in the plea agreement suggests that to "return[] [unlawfully] to the United States" means "to be convicted of illegal reentry under 8 U.S.C. § 1326." Thus, the fact that Plascencia was ultimately convicted of *attempted* illegal reentry—rather than the completed crime—does not by itself mean that Plascencia did not "unlawfully return[] to the United States"

---

**[8]** As noted above, the case law on the standard of review that we apply to a district court's construction of a plea agreement is conflicted. *Compare United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000) *with United States v. Salemo*, 81 F.3d 1453, 1460 (9th Cir. 1996). We need not resolve that conflict, however, because we reach the same conclusion as the district court even under the "less deferential de novo standard of review." *United States v. Transfiguracion*, 442 F.3d 1222, 1227 (9th Cir. 2006).

within the meaning of his plea agreement.**⁹** The "terms of [Plascencia's] plea agreement on their face have a clear and unambiguous meaning," and we need not inquire into what Plascencia and the government "reasonably might have believed" the phrase "unlawfully returns to the United States" to mean when they entered into the plea agreement. *Clark*, 218 F.3d at 1095.

Plascencia presented himself at a United States immigration checkpoint and sought authorization to enter the United States. Because the immigration checkpoint itself is situated in the United States,**¹⁰** Plascencia violated the terms of the plea agreement and "unlawfully return[ed] to the United States" by presenting himself there. The district

---

[9] Nor does the fact that Plascencia passed through the point of entry "under official restraint" compel that conclusion, as Plascencia urged at oral argument. Although entering the United States under "official restraint" is a defense to a charge of illegal reentry, *see United States v. Lombera-Valdovinos*, 429 F.3d 927, 928–30 (9th Cir. 2005), nothing in the plea agreement suggests that it is also an exception for "unlawfully return[ing] to the United States" under the agreement.

[10] At Plascencia's trial, U.S. Customs and Border Protection Officer Willard David Reeves testified twice that the San Ysidro Point of Entry, where Plascencia presented himself in 2011, is located in the United States. On direct examination, the government asked Officer Reeves, "If someone is standing in pre-primary"—the area where "the individuals who are applying for admission stand and walk in [to the checkpoint]"— "are they technically in the United States?" Officer Reeves answered, "Yes." Later, on cross examination, Plascencia asked Officer Reeves, "You gave a little background . . . which indicates that . . . [a person is] actually in the United States before [he] come[s] to a booth [at the San Ysidro Point of Entry.]" Again, Officer Reeves answered, "Yes, sir." Plascencia does not point to, nor have we identified, anything in the record that contradicts Officer Reeves's testimony that a person who presents himself for inspection at the San Ysidro Point of Entry is physically present in United States territory.

court therefore did not err, let alone plainly err, by concluding that Plascencia had breached the terms of his plea agreement.

### 2. The District Court Did Not Err by Ruling that Plascencia Had Breached His Plea Agreement at a Pretrial Motions-in-Limine Hearing.

Next, Plascencia argues that the district court erred by ruling that Plascencia had breached his 2008 plea agreement at a pretrial motions-in-limine hearing. Instead, Plascencia argues, the district court should have submitted the issue to the jury. Alternatively, Plascencia contends, it should have at least required the government to seek a finding of breach *before* reindicting Plascencia on the 2008 charges. Both arguments raise questions of law, which we review *de novo*.

"[A] criminal defendant has a due process right to enforce the terms of his plea agreement." *Buckley v. Terhune*, 441 F.3d 688, 694 (9th Cir. 2006) (en banc) (citing *Santobello v. New York*, 404 U.S. 257, 261–62 (1971)). Our law provides numerous procedural safeguards to ensure that a defendant has an opportunity to exercise this right. If the government indicts a defendant on charges that the defendant believes are barred by a preexisting plea agreement, the defendant may move to dismiss those charges. *See Transfiguracion*, 442 F.3d at 1231; Fed. R. Crim. P. 12(b)(1) ("A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."). If such a motion presents disputed issues of fact, the defendant is entitled to an evidentiary hearing on those issues. *See United States v. Packwood*, 848 F.2d 1009, 1011 (9th Cir. 1988). And in all cases, the government bears the burden of proving that the defendant breached his agreement by a preponderance of the evidence. *See id.*

Here, Plascencia failed to take advantage of these safeguards. At no time during the three years between Plascencia's indictment and his trial did Plascencia move to dismiss the charges against him on grounds that they were barred by his plea agreement. *See* Fed. R. Crim. P. 12(b)(1). Instead, Plascencia waited to address the issue until the *government*—in an abundance of caution—asked the district court to make a finding of breach at a motions-in-limine hearing on the eve of Plascencia's trial. Even then, Plascencia argued only that the issue of breach should be submitted to the jury. He did not request an evidentiary hearing or argue that the government had failed to prove breach by a preponderance of the evidence.

Having failed to avail himself of the existing procedures for enforcing his plea agreement, Plascencia invites us to recognize a new one: a requirement that a district court must submit the issue of a defendant's breach to a jury—or, in the alternative, that the government must secure a judicial finding of breach *before* indicting a defendant on charges that would otherwise be barred by his plea agreement. We decline Plascencia's invitation on both counts.

### a. The District Court Did Not Abuse Its Discretion by Refusing to Submit the Issue of Breach to a Jury.

We have never squarely held that a district judge may find that a defendant breached a prior plea agreement at a pretrial hearing, without submitting the question to a jury.[11] The First Circuit has, and we find its reasoning persuasive.

---

[11] In *United States v. Packwood*, 848 F.2d 1009 (9th Cir. 1988), we affirmed the district court's order granting a defendant's motion to

In *United States v. Gonzalez-Sanchez*, 825 F.2d 572 (1st Cir. 1987), the First Circuit affirmed a district court's denial of a defendant's motion to dismiss the charges against him under Federal Rule of Criminal Procedure 12(b), where the district court found that the defendant had breached his plea agreement by "fail[ing] to cooperate honestly" with the government. *Id.* at 579. Recognizing that "[t]his Circuit and others have set forth safeguards to insure that the government does not arbitrarily or capriciously disregard its obligations under a plea agreement," the First Circuit rejected the argument that the question of breach should have been submitted to a jury. *Id.* at 578. Instead, it held that "[t]he factual determination whether the plea agreement has been breached lies with the trial judge." *Id.* We join the First Circuit in holding that the question of breach is for the district judge, not a jury, to decide.

Plascencia contends that our holding could lead to an "absurd result[]" in a case like his: What if the district judge determined before trial that Plascencia had "unlawfully return[ed]" to the United States, such that the government could prosecute him on the 2008 charges, but the jury returned a verdict of "not guilty" on the 2011 charge of illegal reentry?

This result is not "absurd," however, because the jury's verdict and the district judge's factual finding are subject to

---

dismiss under Federal Rule of Criminal Procedure 12(b), where the defendant argued that the charges against him were barred by a plea agreement. *See id.* at 1012. *Packwood* is not directly on point, because neither party in that case argued that the issue of breach should have been submitted to the jury. If we were to agree with Plascencia today, however, our holding would be in tension with *Packwood*, where we affirmed a district court's order deciding a breach issue in a pretrial motion.

different standards of proof. To bring charges barred by a plea agreement, the government need prove the defendant's breach only "by a preponderance of the evidence." *Packwood*, 848 F.2d at 1011. A *conviction* for illegal reentry, by contrast, requires proof beyond a reasonable doubt. It is not "absurd" that a proffer of evidence might satisfy the lower preponderance-of-the-evidence standard (thereby allowing the charges to be reinstated) but not the higher beyond-a-reasonable-doubt standard (thereby resulting in an acquittal). The district court therefore did not abuse its discretion by refusing to submit the issue of Plascencia's breach to the jury.

> ### b. The District Court Did Not Err by Allowing the Government to Reindict Plascencia on the 2008 Charges Without First Seeking a Judicial Finding of Breach.

We have also never expressly addressed whether the government must seek a judicial finding of breach before indicting a defendant on charges barred by a plea agreement. But again, we think that the procedures outlined above—a motion to dismiss under Rule 12(b), with an evidentiary hearing to resolve disputed factual issues and a burden of proof that rests squarely on the government—are sufficient to protect a defendant's due-process right to enforce the terms of his plea agreement. Plascencia has pointed us to no statute or case law requiring the government to seek a preindictment finding of breach,[12] and we decline to recognize such a requirement here.

---

[12] In his opening brief, Plascencia cites *United States v. Rendon*, 752 F.3d 1130 (8th Cir. 2014), for the proposition that "the government is generally required to 'file[] a motion asking the district court to find

The government, citing *United States v. Verrusio*, 803 F.2d 885 (7th Cir. 1986), urges us to reach this conclusion for a different reason. We are not persuaded by *Verrusio*'s reasoning, however, and we decline to adopt it here.

In 1979, George Verrusio was arrested for possessing cocaine and agreed to testify about "his knowledge of and involvement in a conspiracy . . . to transport cocaine" in exchange for the government's promise not to prosecute him on certain drug charges. *Id.* at 887. After Verrusio testified, "the government came to believe that Verrusio had not been truthful in his . . . testimony" and reinstated the drug charges against him. *Id.* Before his trial, Verrusio moved to dismiss the charges, arguing that they were barred by his plea agreement. *Id.* The district court denied Verrusio's motion, and Verrusio appealed, arguing—as Plascencia argues here—that "the government, as a matter of due process, must obtain a judicial determination that he breached the plea agreement before it can reindict him on charges that were dismissed or not brought pursuant to the plea agreement." *Id.* at 888.

The Seventh Circuit rejected this argument. "The advantage for which [Verrusio] bargained," the Seventh Circuit explained, "was that he would not run the *risk of conviction* on charges arising out of his participation in the conspiracy to transport cocaine." *Id.* at 889 (emphasis in original). Because Verrusio "would be deprived of the benefit of his bargain only if he was *tried* pursuant to the

---

the defendant in breach of a plea agreement before it is released from its obligations' under the agreement." But *Rendon* said only that "the government *typically* files" such a motion, not that the government *must* do so. *Rendon*, 752 F.3d at 1135 (emphasis added).

second indictment [which brought the three drug charges],"
that indictment "standing alone did not constitute a
deprivation of Verrusio's [due-process] interest in
enforcement of the plea agreement," and it did not violate
the terms of his plea agreement. *Id.*

We decline to adopt this reasoning here. In Plascencia's
plea agreement, the government promised "not to *prosecute*"
Plascencia on the 2008 charges. To "prosecute" a person
means "[t]o *institute and pursue* a criminal action against"
that person. *See* "Prosecute," Black's Law Dictionary (10th
ed. 2014) (emphasis added). Thus, in our view, the
government's promise not to "prosecute" Plascencia was a
promise not to *reinstate* the 2008 charges against him—not
just a promise not to *try* him on those charges.

In any case, Plascencia never moved to dismiss the
charges against him. Instead, the government went out of its
way to request a judicial finding that those charges were not
barred by Plascencia's 2008 plea agreement because
Plascencia had breached the agreement. Because the
government was under no obligation to seek this finding in
the first place, its decision to seek the finding after
reinstating the 2008 charges against Plascencia could not
have been reversible error.

In sum, we conclude that the proper way for a defendant
to raise a prior plea agreement as a defense to a criminal
charge is to move to dismiss that charge under Federal Rule
of Criminal Procedure 12(b). If the government thinks that
the defendant has breached the plea agreement, such that it
no longer applies, then it must proffer sufficient evidence to
establish that breach by a preponderance of the evidence. *See*
*Packwood*, 848 F.2d at 1011. The matter need not be
submitted to a jury, nor need it be decided before the
indictment or information is filed. The district court

followed these procedures here, and its ruling at the motions-in-limine hearing that Plascencia had breached his plea agreement was not reversible error.

### 3. The District Court Did Not Err by Failing to Hold an Evidentiary Hearing Sua Sponte.

Finally, Plascencia argues that the district court erred by failing to hold an evidentiary hearing on the issue of breach. A district court's decision whether to hold an evidentiary hearing is reviewed for abuse of discretion. *Packwood*, 848 F.2d at 1010. Because Plascencia never requested an evidentiary hearing, the district court's failure to conduct one *sua sponte* is reviewed for plain error. Fed. R. Crim. P. 52(b).

District courts hold evidentiary hearings on breach-of-plea-agreement claims where necessary "to resolve a factual dispute between the parties over what they reasonably understood when entering into a plea agreement." *Id.* at 1011. Here, Plascencia did not even request a hearing—let alone identify a "factual dispute" that would necessitate one. The district court's failure to order an evidentiary hearing *sua sponte* was therefore not error, let alone plain error.

## C. The District Court Did Not Commit Errors That Cumulatively Rendered Plascencia's Trial Fundamentally Unfair.

Plascencia also contends that the district court committed a series of trial errors "which, when taken together, rendered the proceedings fundamentally unfair." But only one of these claimed errors—a question posed to Plascencia regarding the truthfulness of Matilde Del Muro's testimony—was actually error, and the district court took steps to remedy it. Plascencia's trial was therefore not "so

infected with unfairness as to make the resulting conviction a denial of due process." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007).

### 1. The District Court Did Not Abuse Its Discretion by Admitting into Evidence a Mexican Birth Certificate that the Government Claimed Belonged to Plascencia.

During its case-in-chief, the government proffered a birth certificate purporting to certify the birth of an individual named "Ramiro Plascencia-Orozco" in Mexico. It also identified the individual's parents. Defense counsel objected to the government's proffer, arguing that although Plascencia had given the name "Ramiro Plascencia-Orozco" to immigration officials before, he had also given dozens of other names,[13] and the government had offered no reason to believe that "Ramiro Plascencia-Orozco" was Plascencia's true name, as opposed to another alias. On appeal, Plascencia offers a refined version of this argument: The birth certificate was irrelevant evidence because the government failed to establish that the birth certificate was Plascencia's. This Court reviews a district court's evidentiary rulings for abuse of discretion. *United States v. Pablo Varela-Rivera*, 279 F.3d 1174, 1178 (9th Cir. 2002).

Under Federal Rule of Evidence 402, all "relevant evidence is admissible unless" some controlling law provides otherwise; conversely, "[i]rrelevant evidence is not

---

[13] According to the testimony given by the immigration officer in charge of Plascencia's file, whenever Plascencia was arrested for an immigration violation, law enforcement officers recorded the name that he gave and took his fingerprints. By cross-referencing the fingerprints electronically, the government was able to compile a list of the aliases he had given over the years.

admissible." "Evidence is relevant if [] it has any tendency to make a fact more or less probable than it would be without the evidence; and [] the fact is of consequence in determining the action." Fed. R. Evid. 401. Moreover, under Rule 104(b), "[w]hen the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist." A court determines whether such proof is "sufficient" by "examin[ing] all the evidence in the case and decid[ing] whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence." *Huddleston v. United States*, 485 U.S. 681, 690 (1988).

Here, the government adduced several items of evidence suggesting that "Ramiro Plascencia-Orozco"—as opposed to any of the other aliases Plascencia had given to law enforcement officials—was Plascencia's true name. For example, Alberto Del Muro testified that when he first met Plascencia in 1986, Plascencia told Del Muro his name was "Ramiro." Moreover, one of the government's witnesses, a retired immigration officer, testified that when he arrested Plascencia in 1975—Plascencia's second-ever immigration arrest—Plascencia gave the name "Ramiro Plascencia-Orozco." This officer also testified that Plascencia gave him the names of his parents in 1975, which matched the names of the parents listed on the Mexican birth certificate.

From this evidence, a jury could "reasonably find," by a "preponderance of the evidence," that the Mexican birth certificate belonged to Plascencia. *Id.* at 690. Thus, the government introduced sufficient evidence to defeat Plascencia's objection to the birth certificate's relevance, and the district court did not abuse its discretion by admitting the birth certificate.

### 2. The District Court Did Not Err by Failing to Hold a Hearing on Potential Jury Bias After Plascencia Made an Obscene Gesture Towards a Juror.

Next, Plascencia argues that the district court erred by "not asking the jury whether it would be biased against [him] because of [a] gesture" that he made to one of the jurors while he was on the witness stand. The trial transcript does not specify exactly what the gesture was, but according to the clerk of court, who reported the incident to the district judge, it was "inappropriate" and "aggressive." At the government's suggestion, the court advised Plascencia outside the presence of the jury that he was "not to communicate with the jury" and that "the jury takes into account what you say and your actions in determining your credibility."

Plascencia's counsel did not object to this admonition, nor did he propose that the district court investigate whether the gesture had biased any members of the jury. On appeal, however, Plascencia argues that the district court should have "undertake[n] some minimal inquiry to explore the existence of any bias," and that "the absence of any questioning into the matter was an abuse of discretion." Although we ordinarily review for abuse of discretion a district court's failure to hold a hearing on potential jury bias, *United States v. Ivester*, 316 F.3d 955, 960 (9th Cir. 2003), because Plascencia did not request such a hearing at trial, we review the district court's decision here for plain error. Fed. R. Crim. P. 52(b). However, we conclude that the district court did not err, let alone plainly err, by failing to hold a hearing on potential jury bias.

Due process requires that a criminal defendant be afforded a hearing to determine whether bias may have resulted from "an unauthorized *external* contact" with a juror. *Tarango v. McDaniel*, 837 F.3d 936, 948–49 (9th Cir. 2016) (emphasis added). A defendant's conduct in court is not an "external" influence, however. *See United States v. Lopez*, 271 F.3d 472, 488–89 (3d Cir. 2001) (affirming a defendant's conviction and holding that the district court did not abuse its discretion by "not questioning a juror to ascertain if she was biased against [the defendant]" where the juror "sent the [district] judge a note . . . requesting that [the defendant] stop staring at her," because the court "was not confronted with the exertion of an *outside* influence"(emphasis added)). This is especially so where—as here—the defendant takes the witness stand in his own defense. In such cases, the jury may properly consider a defendant's demeanor on the stand in determining his credibility as a witness. *See United States v. Schuler*, 813 F.2d 978, 981 n.3 (9th Cir. 1987).

Here, Plascencia made the purportedly offensive gesture during a sidebar while he was on the witness stand. Thus, the gesture was not "extrinsic" to the proceedings; rather, as the district judge explained to Plascencia, it went to his credibility as a witness. The gesture therefore could not have given rise to a cognizable claim of jury bias.

Moreover, the district court took the curative step of instructing Plascencia to refrain from making such gestures in the future. The district court therefore did not err by failing to hold a hearing on the possibility of jury bias.

**3. The District Court Did Not Abuse Its Discretion by Allowing the Government to Elicit Testimony About the Del Muros' Testimony in Unrelated Prior Proceedings.**

On its direct examination of Alberto Del Muro and Matilde Del Muro, the government asked both witnesses about prior instances in which they had testified against Plascencia. Plascencia did not object to either line of questioning at trial. Then, on cross-examination, the government asked Plascencia about the Del Muros' prior testimony against him:

> Q: You've heard that man, Alberto Del Muro, testify against you in three separate cases now; correct? . . .
>
> A: Yes.
>
> Q: And his wife, Matilde Del Muro, has also testified against you in three separate trials; correct?
>
> A: That's correct. . . .
>
> Q: Now, in those trials, Mr. Del Muro and his wife provided details about their family members and their life to the jury? . . .
>
> A: Well, yes. . . .

This time, Plascencia did object to the line of questioning.

On appeal, Plascencia argues that the district court should have excluded this testimony because it "painted [Plascencia] as a person who would not learn his lesson."

Because Plascencia did not object to the Del Muros' testimony at trial, we review the admission of that testimony for plain error. Because Plascencia did object to the government's questioning of him on cross-examination, we review the admission of that testimony for harmless error.

Under Federal Rule of Evidence 403, a district court "may exclude relevant evidence if its probative value is substantially outweighed by . . . a danger of unfair prejudice." "Application of Rule 403 must be cautious and sparing," however, "because the Rule's major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Haischer*, 780 F.3d 1277, 1282 (9th Cir. 2015) (internal quotation marks, alterations, and citations omitted).

A defendant commits the crime of aggravated identity theft if he "*knowingly* transfers, possesses, or uses, without lawful authority, a means of identification of another person." 18 U.S.C. § 1028A(a)(1) (emphasis added). The statutory term "knowingly" requires that the defendant "knew that the means of identification at issue belonged to another person." *Flores-Figueroa v. United States*, 556 U.S. 646, 657 (2009). Here, the probative value of the Del Muros' and Plascencia's testimony about the Del Muros' prior court appearances was that it proved that Plascencia knew that Alberto Del Muro was a real person. This, in turn, proved that Del Muro's birth certificate "belonged to another person" and was not a forged document giving a fictional identity. True, the testimony had some prejudicial effect, because it suggested that Plascencia had been the subject of judicial proceedings regarding similar alleged misconduct in the past. This testimony was not "dragged in by the heels for

the sake of its prejudicial effect," however, and the district court did not abuse its discretion by allowing it.[14]

### 4. The District Court Did Not Plainly Err by Allowing the Government to Question Plascencia About the Credibility of Matilde Del Muro.

On its cross-examination of Plascencia, the government asked Plascencia whether Matilde Del Muro was lying when she testified that Alberto Del Muro—and not Plascencia—was the father of her five children:

> Q: So it is your testimony that the woman that was here that testified, Matilde Del Muro, is the mother of two of your children?
>
> A: Yes, that is correct. . . .
>
> Q: So the five kids that the gentlemen named Alberto Del Muro testified were his children that he had raised, it's your testimony that two of those children are your children?
>
> A: Yes.

---

[14] Plascencia also argues that this testimony was "irrelevant" and "rank hearsay." Because the testimony had probative value, however, as explained above, it was not irrelevant. *See* Fed. R. Evid. 402. And because the government asked about Alberto Del Muro's prior testimony against Plascencia to establish only that Plascencia knew that Del Muro was a real person, Del Muro's testimony was not "offer[ed] in evidence to prove the truth of the matter[s] asserted [therein]," and hence was not hearsay. *See* Fed. R. Evid. 801(c)(2).

Q: And that Matilde Del Muro [was] lying about that to the jury the other day?

A: That's true.

Plascencia's counsel did not object to this line of questioning. Nonetheless, the next day, the government asked the district court to instruct the jury to "disregard that question and any answer given by the defendant." The court agreed and further instructed the jury "not to consider the testimony of any witness, including the defendant, regarding whether another witness lied in his or her testimony."

On appeal, the government concedes that its question to Plascencia about the truthfulness of Matilde Del Muro's testimony was improper. *See United States v. Alcantara-Castillo*, 788 F.3d 1186, 1191 (9th Cir. 2015) ("A prosecutor must not ask defendants during cross-examination to comment on the truthfulness of other witnesses."). Nonetheless, the government argues, the error does not warrant reversal of Plascencia's conviction because it was not plain.

Because Plascencia did not object to the questioning at trial, we review for plain error. Again, plain error occurs where "(1) there was error; (2) the error committed was plain; (3) the error affected substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Gonzalez-Aparicio*, 663 F.3d at 428. An error "affec[ts] substantial rights" if it "affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734.

Here, even if the prosecutor's question did improperly "vouch[] for [Matilde's] testimony" by suggesting that it was truthful, *Alcantara-Castillo*, 788 F.3d at 1192, it likely did

not "affect[] the outcome of the district court proceedings," because the district court instructed the jury to disregard the testimony, and because as noted above, the government adduced substantial additional evidence of Plascencia's guilt. Moreover, this single question could not have "seriously affected the fairness, integrity, or public reputation" of Plascencia's trial. Thus, the district court's conceded error in allowing the government to ask Plascencia about the truthfulness of Matilde Del Muro's testimony was not plain and does not warrant reversal.

### D. The District Court Did Not Abuse Its Discretion by Sentencing Plascencia to 184 Months' Imprisonment.

Plascencia was convicted on all four of the counts charged in the indictment: two counts of attempted illegal reentry (one arising out of the 2008 entry attempt and one arising out of the 2011 entry attempt) and two counts of aggravated identity theft (same). The district court correctly determined that under the United States Sentencing Guidelines, Plascencia's sentencing range for the two counts of attempted illegal reentry was 130 to 162 months' imprisonment. *See* U.S.S.G. § 2L1.2. The district court sentenced Plascencia to 160 months' imprisonment on these two counts. The district court also imposed the mandatory sentence of 24 months' imprisonment on each of the aggravated-identity-theft counts, to run concurrently with each other but consecutively with the 160-month sentence. *See* 18 U.S.C. § 1028A(a), (b). Thus, Plascencia's total sentence was 184 months.

When reviewing a sentence imposed under the U.S. Sentencing Guidelines, we "first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range,

treating the Guidelines as mandatory, [or] failing to consider the [18 U.S.C.] § 3553(a) factors." *Gall v. United States*, 552 U.S. 38, 51 (2007). Then, we "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* "In determining whether a sentence is unreasonable, we are guided by the sentencing factors set forth in 18 U.S.C. § 3553(a), including the sentencing range established by the Sentencing Guidelines." *United States v. Plouffe*, 445 F.3d 1126, 1131 (9th Cir. 2006). As relevant here, these factors include "the seriousness of the offense," "the need . . . to promote respect for the law," and "the need . . . to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2).

On appeal, Plascencia argues that his sentence was "substantively unreasonable" because the district court failed to consider three factors: (1) Plascencia's claimed "personality disorder," which led him to believe that he was Alberto Del Muro; (2) Plascencia's "age and health problems," and (3) the fact that courts typically impose lower sentences for illegal reentry.

But the district court did consider the third factor: It explained that "[Plascencia's] record is unlike other [illegal-reentry] defendants," because of "[t]he length of [his] record, the number of law enforcement contacts [he has] had over the years, the number of removals from the United States, [and] the number of [aliases he has] used to avoid detection." And although the district court did not directly address the other two factors, it did list several other reasons for imposing a harsher-than-usual sentence. These included: (1) the fact that Plascencia's identity theft had targeted the same victim for over 25 years and had caused him "extraordinary prejudice"; (2) Plascencia's refusal to accept responsibility for his actions; (3) the fact that "a short

custodial sentence . . . would provide only a temporary reprieve for the victim"; (4) Plascencia's "record of criminal convictions," which "reflect[s] that prior interventions of the justice system have been ineffective in deterring criminal conduct on [his] behalf"; and (5) Plascencia's "lack of respect for the law . . . including the intentional activities requiring appointment of multiple counsel [and] bogus filings before . . . the California bar against [his] lawyers."

Because these reasons closely track the sentencing factors in § 3553(a), the district court did not abuse its discretion by imposing a 160-month sentence for Plascencia's illegal-reentry convictions. Moreover, the consecutive 24-month sentence for the aggravated-identity-theft counts was required by statute, and Plascencia does not argue that the district court abused its discretion by imposing it. *See* 18 U.S.C. § 1028A(b). Thus, the district court did not abuse its discretion by imposing a total sentence of 184 months' imprisonment.

## E. The District Court Lacked Authority to Order Plascencia to Use the Name "Ramiro Plascencia-Orozco."

In addition to the 184-month prison sentence and the three-year term of supervised release, the district court also ordered Plascencia to "use his true name of Ramiro Plascencia-Orozco." This was a standalone order signed by the district judge and issued after the sentencing hearing. In its answering brief, the United States "concede[d] that the district court did not have the authority to issue a free-standing order regarding the use of Plascencia's name." In light of this concession, the United States asked us to remand the case to the district court so that the requirement could be included as a condition of Plascencia's supervised release.

At oral argument, however, the United States withdrew its request, and Plascencia did not object.

Because neither party has asked us to do so, we will not remand this case to the district court. We agree with the parties, however, that the district court lacked the authority to issue a freestanding order directing Plascencia to use his true legal name. We therefore vacate the district court's March 30, 2015 order directing Plascencia to "use his true name of Ramiro Plascencia-Orozco."

## IV. Conclusion

For the foregoing reasons, the district court's March 30, 2015 order is **VACATED**. Plascencia's conviction and sentence are **AFFIRMED**.