**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

ADAM LLOYD LIVAR,

*Defendant-Appellant*.

No. 22-30213

D.C. No.3:21-cr-00031-SI-1

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted April 18, 2023
San Francisco, California

Filed July 15, 2024

Before: Lawrence VanDyke and Gabriel P. Sanchez,
Circuit Judges, and Kathryn H. Vratil,[*] District Judge.

Per Curiam Opinion;
Concurrence by Judge Vratil;
Concurrence and Dissent by Judge VanDyke;
Concurrence and Dissent by Judge Sanchez

---

[*] The Honorable Kathryn H. Vratil, United States District Judge for the
District of Kansas, sitting by designation.

# SUMMARY[**]

## Criminal Law

The panel vacated Adam Lloyd Livar's sentence and remanded for resentencing in a case in which Livar pled guilty to failing to register as a sex offender in violation of 18 U.S.C. § 2250(a).

In Livar's plea agreement, the government reserved the right to change its middle-of-the-guidelines-range sentencing recommendation if Livar committed any new criminal offense, obstructed or attempted to obstruct justice, or acted inconsistently with acceptance of responsibility between entering the plea and sentencing.

In a per curiam opinion, the panel addressed whether the appeal became moot based on Livar's release from the Federal Bureau of Prisons on June 6, 2023, to begin serving his five-year term of supervised release. The government contended that the case is moot because the district court sentenced Livar to the minimum supervised release term allowed under 18 U.S.C. § 3583(k). The panel held that because the district court has authority to modify or terminate Livar's current supervised release obligations under 18 U.S.C. § 3583(e) following a successful appeal, the appeal is not moot.

The per curiam opinion summarized the holdings that resulted from the judges' separate opinions.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

First, all three panel members agreed that when the government seeks to be relieved of its obligations under the plea agreement because, in its view, the defendant breached the plea agreement or failed to satisfy a condition precedent, the district court must hold an evidentiary hearing to resolve any such factual disputes. Because the district court declined to adjudicate whether Livar committed a new crime when he made profanity-laced threatening statements during a phone call he placed from prison to a child protective services case worker, and therefore never made the required determination in this case, the panel unanimously concluded that Livar's sentence should be vacated.

Second, a majority of the panel (Judges VanDyke and Vratil) concluded due process does not require the government to seek a judicial determination of a defendant's failure to comply with the plea agreement *before* it submits a sentencing recommendation that differs from the terms of the agreement. The government thus does not breach its obligations under an agreement simply by submitting a different sentencing recommendation without a prior judicial determination of whether the defendant failed to comply with the plea agreement, nor is it required to *first* seek a preliminary determination as to whether its recommendation complies with the agreement. There must be a judicial determination, but it need not necessarily come first.

Finally, a different majority of the panel (Judges Sanchez and Vratil) concluded the proper remedy in this case is remand with instructions that judgment be entered with a term of imprisonment of time served and all other terms and conditions including Livar's five-year term of supervised release to remain the same as the original judgment.

District Judge Vratil concurred.  She wrote that the record does not support the district court's conclusion that the government had not breached the plea agreement, that the district court erred in so holding, and that the appropriate remedy is remand with entry of judgment of time served followed by a five-year term of supervised release.  She agreed that under Ninth Circuit precedent Livar's appeal is not moot, but wrote that in cases where a defendant appeals only the custody portion of his sentence and the Bureau of Prisons releases him while the appeal is pending, Ninth Circuit precedent appears to be inconsistent with established principles of mootness.

Judge VanDyke concurred in part and dissented in part. He departed from his colleagues in two ways.  First, disagreeing with Judge Sanchez, he does not understand due process to require the government to obtain a judicial determination before it responds to a defendant's breach of his plea agreement. Second, he disagrees with both of his colleagues as to the appropriate remedy.  Because the district court never made a finding in response to the government's claims that Livar breached, the panel is not yet in any position to decide whether the government was entitled to ignore its end of the bargain.  He would vacate Livar's sentence and remand for further proceedings before the same judge to adjudicate the government's claims in first instance. If, on remand, the court determined that Livar indeed breached, that same judge could resentence him with the benefit of the government's enhanced sentencing recommendation.  And if the court determines that Livar did not breach, this court's precedent demands resentencing before a different judge, where the government can provide Livar the benefit of his bargain.

Judge Sanchez concurred in part and dissented in part. He wrote that the government's failure to abide by the strict terms of the plea agreement constitutes a breach of the agreement and requires that this court vacate the sentence and remand; that his colleagues' conclusion that the government may breach first and ask for forgiveness later is antithetical to the due process principles underlying Supreme Court and circuit precedent; that there is little downside to requiring that the government file a motion seeking a judicial determination that a defendant has breached the plea agreement before it acts in a manner inconsistent with the agreement's terms; and that substantial disruption and inefficiency awaits the path blessed by the decision here.

## COUNSEL

Suzanne Miles (argued), Assistant United States Attorney, Criminal Appeals Section Chief; Thomas S. Ratcliffe, Assistant United States Attorney; Natalie K. Wight, United States Attorney, District of Oregon; United States Department of Justice, Office of the United States Attorney, Portland, Oregon; for Plaintiff-Appellee.

Stephen R. Sady (argued), Chief Deputy Federal Public Defender, Federal Public Defender's Office, Portland, Oregon, for Defendant-Appellant.

**OPINION**

PER CURIAM:

Adam Lloyd Livar appeals his thirty-month sentence imposed after he pled guilty to a one-count indictment for failing to register as a sex offender in violation of 18 U.S.C. § 2250(a).  Because each panel member has issued their own opinion and the composition of the majority changes for different conclusions, this per curiam opinion provides (1) the necessary factual background to understand the individual decisions that follow, (2) the panel's unanimous mootness analysis, and (3) a summary of the panel's other holdings derived from the separate writings.

I.

On March 24, 2003, Adam Livar was convicted of indecency with a child in Texas.  As a result of this conviction, he must register as a sex offender pursuant to the Sex Offender Registration and Notification Act, 18 U.S.C. § 2250(a).  In 2019, Livar registered as a sex offender in the states of Idaho and Oregon, listing his residence in Payette, Idaho.  When he moved to Oregon in early 2020, he did not update his address within the sex offender registry.  He was consequently charged with a single count of failing to register as a sex offender, in violation of § 2250(a).  He entered a guilty plea.

Under the plea agreement, the government agreed to "jointly recommend a sentence at the *middle* of the advisory guideline range followed by a 5-year term of supervised release, as long as [Livar] demonstrates acceptance of responsibility." (emphasis in original).  The government reserved the right to change the recommendation if Livar

committed any new criminal offense, obstructed or attempted to obstruct justice, or acted inconsistently with acceptance of responsibility between entering the plea and sentencing. The agreement also contained the following breach provision:

> If defendant breaches the terms of this agreement, or commits any new criminal offenses between signing this agreement and sentencing, the USAO is relieved of its obligations under this agreement, but defendant may not withdraw any guilty plea. If defendant believes that the government has breached the plea agreement, defendant must raise any such claim before the district court, either prior to or at sentencing. If defendant fails to raise a breach claim in district court, defendant has waived any such claim and is precluded from raising a breach claim for the first time on appeal.

On October 25, 2022, after the entry of his guilty plea but before sentencing, Livar placed a call to an Oregon Department of Human Services child protective services caseworker on a recorded line from prison. The caseworker informed Livar that his four young children had been placed in foster care. Upset by this news, Livar responded with a barrage of profanity-laced threatening statements. Shortly after the call, Livar apologized to the caseworker for his behavior.

Based on Livar's statements in this recorded prison call, the Malheur County District Attorney charged him with misdemeanor offenses under Oregon state law for menacing

and harassment.[1]  When the government learned of the new charges, the government emailed Livar's counsel and the probation office outlining its position that Livar's call was inconsistent with acceptance of responsibility as set forth in the plea agreement.  The government informed Livar's counsel that it was no longer bound by the joint sentencing recommendation and was free to recommend a more severe punishment.  Livar's counsel responded that Livar had accepted responsibility for the charged offense and cautioned that it would be premature for the government to change its recommendation prior to the court's determination of acceptance of responsibility.

The government did not first seek a judicial determination of Livar's alleged breach of the plea agreement.  Instead, the government filed a sentencing memorandum in which it asserted that Livar breached the plea agreement by committing a new crime, the recorded prison call.  The government argued it was no longer bound by its obligation to recommend a mid-level sentence or to recommend a downward adjustment for acceptance of responsibility.  The government also argued that the recorded prison call reflected that Livar did not accept responsibility for the offense of conviction.  The government accordingly recommended a sentence of thirty-seven months, the high end of the sentencing guidelines range, with no downward adjustment for acceptance of responsibility.  The government also recommended ten years of supervised release.

---

[1] On June 8, 2023, after Livar's release from federal custody, the state court arraigned him on these charges.  *See State v. Livar*, No. 22-cr-54882 (Or. Cir. Ct. Nov. 15, 2022).

Livar's sentencing memorandum asserted that he had accepted responsibility for the offense of conviction—his failure to register as a sex offender—and he argued for a sentence consistent with the terms of the plea agreement: a mid-range sentence of twenty-seven months and five years of supervised release.

On December 14, 2022, the parties appeared for Livar's sentencing hearing. After the government and defense counsel presented oral argument, the district court determined that Livar had accepted responsibility for the offense of conviction, with an applicable guideline range of twenty-four to thirty months. At this point in the hearing, the government asked the court whether it could advocate for a sentence at the high end of the sentencing range or whether it was "stuck" with its obligation in the plea agreement to recommend a mid-range sentence. The court responded that the government should "stick with arguing at the mid-level range so that there is no question that you are abiding by your agreement." Defense counsel argued that the government had already violated the terms of the plea agreement by not waiting for the court's decision whether Livar had accepted responsibility before advocating for a high-end sentence in its sentencing memorandum.

After argument from the government that Livar was himself in breach of the plea agreement, the district court declined to make such a finding. The court found, however, that the government acted in good faith and had not breached the plea agreement. The district court sentenced Livar to a thirty-month prison term followed by a five-year term of supervised release. On December 28, 2022, the court entered its second amended judgment. This appeal timely followed.

We have jurisdiction pursuant to 28 U.S.C. § 1291. Where, as here, the defendant objected to the government's alleged breach of the plea agreement during district court proceedings, we review such claim *de novo*. *See United States v. Mondragon*, 228 F.3d 978, 980 (9th Cir. 2000).

## II.

We first address whether this appeal has become moot based on Livar's release from the Federal Bureau of Prisons on June 6, 2023, to begin serving his five-year term of supervised release. After considering the parties' supplemental briefing, we agree with Livar that this appeal is not moot.

"A case becomes moot when it no longer satisfies the case-or-controversy requirement" of the Constitution, which demands that "the parties 'continue to have a personal stake in the outcome of the lawsuit.'" *United States v. Verdin*, 243 F.3d 1174, 1177 (9th Cir. 2001) (quoting *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)). "This means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer*, 523 U.S. at 7 (quotation marks and citation omitted). Thus, "[a] defendant challenging the length of his prison sentence has a personal stake in the outcome . . . when the defendant has completed his term of incarceration but is still serving a term of supervised release" and the possibility exists that a court may reduce or modify the defendant's supervised release term as a form of relief. *United States v. D.M.*, 869 F.3d 1133, 1137 (9th Cir. 2017). "The party asserting mootness bears a 'heavy burden of establishing that there is no effective relief remaining for a court to provide.'" *United States v. Strong*, 489 F.3d 1055, 1059 (9th Cir. 2007)

(quoting *GATX/Airlog Co. v. U.S. Dist. Ct.*, 192 F.3d 1304, 1306 (9th Cir. 1999)).

The government contends that the case is moot because the district court sentenced Livar to the minimum supervised release term allowed under the statute. *See* 18 U.S.C. § 3583(k) (requiring a supervised release term of "any term of years not less than 5" for conviction under 18 U.S.C. § 2250). To be sure, unless a defendant qualifies for safety valve relief under 18 U.S.C. § 3553(e), the district court generally lacks authority at sentencing to impose a term of supervised release below the statutory minimum. After sentencing, however, the district court has discretion to "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release." 18 U.S.C. § 3583(e)(2). The court may also terminate an individual's term of supervised release "at any time after the expiration of one year . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). Under our precedent, the "possibility" that the district court may exercise its discretion at a future proceeding to reduce a term or modify the conditions of supervised release under 18 U.S.C. § 3583(e) is sufficient to prevent the case from being moot. *Mujahid v. Daniels*, 413 F.3d 991, 995 (9th Cir. 2005); *see Gunderson v. Hood*, 268 F.3d 1149, 1153 (9th Cir. 2001) (concluding case was not moot because "there is a possibility of the court[] reducing or modifying [the defendant's] supervised release under 18 U.S.C. § 3583(e)(2)"); *D.M.*, 869 F.3d at 1137–38 (concluding defendant's release from prison and commencement of five-year term of supervised release did not render appeal moot "because the district court may modify [defendant's] term of supervised release" under 18

US.C. § 3583(e)(1) & (e)(2)); *Allen v. Ives*, 950 F.3d 1184, 1187 (9th Cir. 2020) (concluding the same from petition for habeas relief).

*United States v. Johnson*, 529 U.S. 53 (2000) does not require a different result.  In *Johnson*, the Supreme Court held that an offender who wrongfully served an excessive prison sentence was not entitled to an automatic offset of his term of supervised release because supervised release statutorily commences upon release from federal custody, not when a sentence lawfully ends.  *Id.* at 55–58; *see Mujahid*, 413 F.3d at 994.  But *Johnson* also observed that "[t]here can be no doubt that equitable considerations of great weight exist when an individual is incarcerated beyond the proper expiration of his prison term," and the Court noted that the district court may exercise its discretion under 18 U.S.C. § 3583(e)(1) & (e)(2) to reduce or terminate an individual's supervised release obligations to remedy this violation.  *Id.* at 60.

The government has not carried its heavy burden of demonstrating that "there is no effective relief remaining for a court to provide."  *D.M.*, 869 F.3d at 1137 (quotation marks and citation omitted).  Because the district court has the authority to modify or terminate Livar's current supervised release obligations under 18 U.S.C. § 3583(e) following a successful appeal, the possibility that the district court may do so is sufficient to prevent the appeal from being moot.  *See Strong*, 489 F.3d at 1060; *Mujahid*, 413 F.3d at 995.

III.

We conclude by summarizing the holdings that result from our separate opinions.

First, all three panel members agree that when the government seeks to be relieved of its obligations under the plea agreement because, in its view, the defendant breached the plea agreement or failed to satisfy a condition precedent, the district court must hold an evidentiary hearing to resolve any such factual disputes. Because the district court declined to adjudicate whether Livar committed a new crime and therefore never made the required determination in this case, the panel unanimously concludes that Livar's sentence should be vacated.

Second, a majority of the panel (Judges VANDYKE and VRATIL) concludes due process does not require the government to seek or receive a judicial determination of a defendant's failure to comply with the plea agreement *before* it submits a sentencing recommendation that differs from the terms of the agreement. The government thus does not breach its obligations under an agreement simply by submitting a different sentencing recommendation without a prior judicial determination of whether the defendant failed to comply with the plea agreement, nor is it required to *first* seek a preliminary determination as to whether its recommendation complies with the agreement. There must be a judicial determination, but it need not necessarily come first.

Finally, a different majority of the panel (Judges SANCHEZ and VRATIL) concludes the proper remedy in this case is remand with instructions that judgment be entered with a term of imprisonment of time served and all other terms and conditions—including Livar's five-year term of supervised release—to remain the same as the original judgment.

IV.

We therefore **VACATE** Livar's sentence and the judgment and **REMAND** for resentencing as described above.

---

VRATIL, District Judge, concurring:

I agree with Judge VanDyke: if the government wants to submit a sentencing recommendation which differs from one agreed in a plea agreement, due process does not require that it first obtain a judicial determination that defendant has breached the agreement.[1]  Here, a condition precedent to the government's obligation to recommend a certain sentence was that Livar commit no new crime.  If Livar refrained from additional criminal conduct, the government had a duty to recommend the agreed sentence and its failure to do so breached the plea agreement.  On the other hand, if Livar committed a new crime, the government was excused from performing.  Whether Livar had committed a new crime was disputed, and the district court declined to address that issue.  Therefore, the record does not support the district court's conclusion that the government had not breached the plea agreement, and it erred in so holding.

Ordinarily, this error would result in remand for resolution of the issue whether the government was in breach, and for resentencing.  Here, because Livar has already served the custody component of his sentence, he received the statutory minimum term of supervised release

---

[1] It is important to note that the plea agreement in this case did not require that the government secure a preliminary determination that its sentencing recommendation complied with the agreement.

and the government did not appeal either aspect of the sentence, I also agree with Judge Sanchez: the appropriate remedy is remand with entry of judgment of time served, followed by a five-year term of supervised release.

## I.   The Record Is Insufficient To Conclude Whether The Government Breached The Plea Agreement

We interpret plea agreements using contract law standards. *United States v. Goodall*, 21 F.4th 555, 561 (9th Cir. 2021). Under federal contract law, absent specific language to the contrary, we ordinarily interpret contractual language as the mutual exchange of promises supported by consideration. *First Interstate Bank of Idaho v. Small Bus. Admin.*, 868 F.2d 340, 343–44 (9th Cir. 1989). Even so, we will "generally enforce the plain language of a plea agreement if it is clear and unambiguous on its face." *United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir. 2005), *overruled on other grounds by United States v. Castillo*, 496 F.3d 947, 957 (9th Cir. 2007) (en banc). Contracting parties often include conditions precedent which are conditions that "must exist before a duty of immediate performance arises." *Wien Consol. Airlines, Inc. v. Comm'r*, 528 F.2d 735, 737 n.4 (9th Cir. 1976) (quotation marks and citation omitted). In other words, a party has no contractual duty to fulfill contractual obligations which depend on the existence of certain conditions unless and until such conditions exist. *See* 8 Corbin on Contracts § 30.13 at 28 (1999). Whether a contract contains conditions precedent is a matter of contract interpretation, which is a question of law. *In re Bubble Up Del., Inc.*, 684 F.2d 1259, 1264 (9th Cir. 1982).

Paragraph 9 of the plea agreement states that "[t]he parties jointly recommend a sentence at the middle of the advisory guideline range, followed by a 5-year term of

supervised release, as long as defendant demonstrates acceptance of responsibility." Paragraph 14 of the plea agreement states that "[i]f defendant breaches the terms of this agreement, or commits any new criminal offenses between signing this agreement and sentencing, the [government] is relieved of its obligations under this agreement." The plain language of these provisions created a duty for the government to recommend the agreed sentence *if* Livar satisfied three conditions precedent: (1) he demonstrated acceptance of responsibility, (2) he did not breach the plea agreement and (3) before the government's sentencing recommendation, he did not commit a new criminal offense. *See* 8 Corbin on Contracts § 30.12 at 22 ("a condition is a fact or an event and is not an expression of intention or an assurance"). If Livar fulfilled the conditions precedent, the government's fulfillment of its own obligation to recommend a certain sentence under the plea agreement was "paramount." *United States v. Johnson*, 241 F.3d 1049, 1054 (8th Cir. 2001) (citing *Santobello v. New York*, 404 U.S. 257, 260 (1971)).

If Livar committed a new crime, he failed to satisfy the third condition precedent. *See* Plea Agreement ¶ 14.[2] My colleagues focus on whether Livar's alleged breach relieved

---

[2] Arguably, Livar's alleged commission of a new crime also established that he had not fully accepted responsibility. *See* Plea Agreement ¶ 8 (government reserves right to change acceptance of responsibility "recommendation if defendant, between plea and sentencing, commits any criminal offense"). The district court found that Livar had accepted responsibility, however, and the government did not appeal this finding. For purposes of this appeal, we therefore only need to address whether Livar failed to satisfy the condition that he commit no new criminal offense. Neither party argues that Livar otherwise breached the plea agreement.

the government of its obligations under the plea agreement. In doing so, they incorrectly assume that if Livar committed an additional crime, he breached the agreement.[3] Livar did not promise to refrain from criminal conduct before sentencing, however, so his alleged failure to do so was not a breach of the agreement.

This is not a hollow distinction. Under general contract principles, Livar—as the party asserting a breach—had the initial burden to prove that he fulfilled any conditions precedent, *i.e.* that he had committed no new criminal offense. *Zurich Am. Ins. Co. v. Ironshore Specialty Ins. Co.*, 964 F.3d 804, 811 (9th Cir. 2020) (Nevada law); *see also* Cal. Civ. Code § 3392 (2024) (specific performance cannot be enforced in favor of party who has not fully performed all conditions precedent to obligation of other party).

Before sentencing, the government advocated for a more severe sentence than the agreed recommendation in the plea agreement. Relying on paragraphs 8 and 14, the government responded that Livar had breached the plea agreement and

---

[3] To be sure, paragraph 14 of the plea agreement set forth the same consequences for breach of the agreement and for committing a new crime. Even so, my colleagues do not explain how Livar's commission of a new crime constitutes a breach of contract rather than the non-fulfillment of a condition precedent. *See* 8 Corbin on Contracts § 30.13 at 28 ("If the condition consists of a personal action, it may properly be said not to be performed; but non-performance is not a breach of contract unless the person promised to render the performance—to perform the condition."). Moreover, paragraph 14 of the plea agreement is written in the disjunctive, which suggests that Livar could commit a criminal offense without necessarily breaching the agreement. *See* Plea Agreement ¶ 14 (government is relieved of its obligations if Livar either "breaches the terms of the agreement, *or* commits any new criminal offenses between signing this agreement and sentencing") (emphasis added).

thus relieved the government of its duty to perform. The district court concluded that Livar had accepted responsibility and that the government had not in any way breached the plea agreement. In concluding that the government had not breached "in any way," the district court necessarily—although implicitly—held that Livar had committed a new criminal offense. The district court did not make findings of fact or conclusions of law which support this implicit conclusion, and it erred in failing to do so. *See generally Chavez-Meza v. United States*, 585 U.S. 109, 113 (2018) (sentencing judge must set forth enough detail to satisfy appellate court that he considered parties' arguments and had reasoned basis for exercising legal decision-making authority).

## II. The Appropriate Remedy Is Remand Without A Resentencing

Ordinarily, the appropriate remedy would be to remand, so that the district court could decide whether the government had breached the plea agreement, and conduct further sentencing proceedings consistent with its resolution of that issue.

Unfortunately, the course of events has overtaken the appellate process in this case. Livar has already served the custody component of his sentence and the district court imposed the statutory minimum term of supervised release. The government did not appeal the custody sentence or the term of supervised release. This appeal is moot, except for the hypothetical possibility that in future proceedings, the outcome of this appeal might impact the length or terms of Livar's supervised release. In this case, nothing is gained by remanding with instructions that the district court further develop the factual record and make further findings whether

the government breached the plea agreement. Furthermore, a remand for plenary resentencing would be unjust. On appeal, Livar sought remand to reduce his custodial sentence from 30 months to 27 months, based on the plea agreement. At a plenary resentencing, the district court could rule that Livar had over-served his custodial sentence and take that into account in deciding whether to grant early termination or modify the terms of Livar's supervised release under Section 3583(e). *See United States v. Ponce*, 22 F.4th 1045, 1046 (9th Cir. 2022) (under § 3583(e)(1), district court has discretion to consider wide range of circumstances); *see also* 18 U.S.C. § 3583(e) (district court can grant relief after considering factors set forth in Section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)).

On the other hand, at a plenary resentencing, the district court could give Livar a sentence with longer terms of both custody and supervised release. Resentencing with the possibility of a more severe sentence would be unjust because the government did not appeal the sentence imposed.

We have "broad authority to 'modify, vacate, set aside or reverse' an order of a district court," and "direct such further action on remand 'as may be just under the circumstances.'" *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 661 (1978) (quoting 28 U.S.C. § 2106). Entry of a judgment of time served and a five-year term of supervised release is the one fitting conclusion to this case.

## III.  Mootness Of Livar's Appeal

I agree with Part II of the per curiam opinion that under Ninth Circuit precedent, Livar's appeal is not moot. In cases where a defendant appeals only the custody portion of his sentence and the Bureau of Prisons releases him while the

appeal is pending, however, Ninth Circuit precedent appears to be inconsistent with established principles of mootness. Initially, I question whether Ninth Circuit precedent correctly identifies which party bears the burden on the issue of mootness, and in what context.[4]   Furthermore, Ninth Circuit precedent is difficult to square with well-established case law and Supreme Court authority.  *Compare Juvenile Male*, 564 U.S. at 937 (possible, indirect benefit of favorable decision in future lawsuit insufficient to save current case from mootness) *with Allen v. Ives*, 950 F.3d 1184, 1187 (9th Cir. 2020) (appeal not moot based on possibility habeas petitioner could receive reduced term of supervised release in subsequent proceeding before sentencing court under § 3583(e)); *Mujahid*, 413 F.3d at 995 (same); and *Gunderson v. Hood*, 268 F.3d 1149, 1153 (9th Cir. 2001) (same).   That the district court has discretion to reduce Livar's term of supervised release in a hypothetical future proceeding does not tell us anything about whether the parties have some "concrete interest" in the current appeal of a sentence which imposed the statutory minimum term of supervised release.  *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (parties must have "concrete interest, however small, in the outcome of the litigation").

---

[4] *Compare United States v. Juvenile Male*, 564 U.S. 932, 936 (2011) (when defendant challenges only expired sentence, *he* bears burden to show ongoing collateral consequence traceable to challenged portion of sentence and that favorable judicial decision will redress consequence) *with United States v. Strong*, 489 F.3d 1055, 1059 (9th Cir. 2007) (party asserting mootness bears heavy burden to establish no effective relief remains for court to provide); and *Mujahid v. Daniels*, 413 F.3d 991, 994 (9th Cir. 2005) (where defendant has completed term of incarceration, government burden of demonstrating mootness is heavy one).

VANDYKE, Circuit Judge, concurring in part and dissenting in part:

I agree with my colleagues that, absent a defendant's breach, the government must keep the promises it makes when plea bargaining with a defendant. I also agree that the government has no independent authority to avoid its responsibilities under a plea agreement by *unilaterally and finally* declaring that the defendant is in breach.[1] Instead, there must be a judicial determination of any claimed breach by the trial court, with, if necessary, "an evidentiary hearing to resolve disputed factual issues and a burden of proof that rests squarely on the government." *United States v. Plascencia–Orozco*, 852 F.3d 910, 921 (9th Cir. 2017). That finding was not made here so I would vacate Livar's sentence and remand to the trial court to consider in the first instance whether Livar breached the plea agreement.

I depart from my colleagues, however, in two ways. First, in contrast with the rule that only Judge Sanchez urges us to adopt today, I do not understand due process to require the government to obtain a judicial determination *before* it responds to a defendant's breach of his plea agreement. Such a rule is inconsistent with the caselaw of both this

---

[1] Judge Vratil posits that Livar did not breach the agreement but instead failed to fulfill a condition precedent. As I see it, that's a distinction without a difference in this case. Whether better characterized as breaching his own promise or simply failing to fulfill a condition precedent, what is ultimately important about Livar's actions is whether they relieved the government of the performance it promised in exchange for Livar's promises. Importantly, Judge Vratil and I do not disagree that while the district court must ultimately adjudicate that key issue, it may do so *after* the government submits a sentencing recommendation that differs from what it promised under the agreement. More on that below.

circuit and most of our sister circuits, which requires only that the government seek judicial *ratification* of its actions, not *permission*. It also imposes a new procedural requirement on the government that provides no additional benefit to the defendant.

Second, I disagree with both of my colleagues as to the appropriate remedy. Judge Sanchez contends that the government breached the moment it acted inconsistently with its own obligations under the plea agreement without first seeking permission from the district court. Under his view, that breach tainted all subsequent proceedings, including the sentencing hearing itself. To avoid that supposed taint, he would vacate Livar's sentence and remand for resentencing, and he goes out of his way to ensure that Livar is not left worse off than before—even though Livar, not the government, is the one demanding resentencing.

If Judge Sanchez's theory of breach was correct, that might very well be the prudent approach. But Judge Sanchez has gotten ahead of himself. The district court erred by sentencing Livar without resolving the government's claim that Livar breached. And because the district court never made a finding in response to the government's claims that Livar breached, we are not yet in any position to decide whether the government was entitled to ignore its end of the bargain.

Judge Vratil's approach to the remand is even harder to square. She shares my view that the district court need not decide whether Livar breached before the government may act contrary to the plea agreement. But she would still remand for an entry of judgment of time served and a five-year term of supervised release rather than for further

factfinding. She asserts that to do otherwise would be "unjust because the government did not appeal the sentence imposed" and therefore this "is the one fitting conclusion."

Her position ignores that it was *Livar*, not the government, that asked this court to vacate his sentence and remand for resentencing. Where a defendant himself makes such a request, I am aware of no legal principle that would require this court to limit a district court from exercising the same sentencing discretion on remand that it did in the first instance. Defendants must be aware that the district court's exercise of such discretion might very well result in a *higher* sentence, not a lower one. That is especially true where, as explained below, there is ample reason to believe the government was 100% correct to argue that Livar failed to fulfill his obligations under the plea agreement by committing a new crime. Ultimately, there is nothing unjust about giving Livar what he asked for—vacatur and remand—and only that.

To remedy the district court's error, I would instead vacate Livar's sentence and remand for further proceedings before the same judge to adjudicate the government's breach claims in the first instance. If, on remand, the court determined that Livar indeed breached, that same judge could resentence him with the benefit of the government's enhanced sentencing recommendation. And if the court determines that Livar did not breach, I agree that our precedent demands resentencing before a different judge, where the government can provide Livar the benefit of his bargain: "the presentation of a 'united front' to the court." *United States v. Alcala-Sanchez*, 666 F.3d 571, 575 (9th Cir. 2012) (citation omitted).

## I. Due Process Does Not Require the Government to Receive a Judicial Determination of a Defendant's Breach of a Plea Agreement Before It Acts on that Perceived Breach.

Judge Sanchez would hold that due process demands that the government must "seek a judicial determination of a defendant's alleged breach *before* it may be relieved of its obligations under a plea agreement." This requirement is (1) inconsistent with our own caselaw and prior practice; (2) unwieldly, creating no additional benefit to defendants while imposing unnecessary procedural burdens on the prosecution; and (3) decidedly *not* the rule that most of our sister circuits have adopted, despite Judge Sanchez's assertions to the contrary.

In the past, we have affirmed convictions in circumstances where the government acted first and the court only later ratified its assertion of breach. In *United States v. Roberts*, for example, the defendant entered a plea agreement in which the government promised to "recommend that the court reduce Roberts's sentence by half if he cooperated with the government against" his co-conspirators. 5 F.3d 365, 367 (9th Cir. 1993). The agreement stipulated that it would be void "if Roberts disobeyed the law—to be determined by a 'probable cause' standard of proof." *Id.* After the agreement was signed, the government received reports from informants that Roberts continued to participate in the conspiracy, from which the government "decided Roberts had broken the law and breached the agreement." *Id.*

After receiving that information—*and without first seeking a judicial determination regarding Roberts's breach*—the prosecution "did not move the court for a

reduced sentence" as promised. *Id.* On appeal, this court gave no indication that the government violated Roberts's due process rights in doing so without first litigating Roberts's alleged breach. To the contrary, this court affirmed the conviction, concluding that "the government did not breach the plea agreement by not asking for a reduced sentence because the defendant breached it first by breaking the law." *Id.* at 370.

Even cases that reverse convictions because of a breach by the government demonstrate the novelty of the rule suggested by Judge Sanchez. In *United States v. Packwood*, for example, the government indicted Packwood for murder notwithstanding a prior plea agreement not to do so. 848 F.2d 1009, 1010 (9th Cir. 1988). Packwood, citing the agreement, moved to dismiss the charges. In support of its decision to prosecute Packwood, the government contended that Packwood had breached first, freeing it from its own obligations under the agreement. *Id.*

The trial court's reasons for granting Packwood's motion and dismissing the charges are revealing. *Id.* It did not simply rely on the fact that the government indicted Packwood without first seeking an adjudication of its breach claim. *Id.* Indeed, that fact did not merit so much as a mention in this court's discussion of the district court's decision to dismiss the indictment, even though that fact alone would be dispositive under Judge Sanchez's rationale in this case. *See id.* (*Packwood*'s description of the district court's four bases for dismissal). Instead of relying on such ancillary procedural concerns, the trial court considered the *merits* of the government's argument, dismissing because "the breach alleged by the government was not material" and therefore did not free the government from its end of the bargain. *Id.* This court affirmed, again deciding the

underlying merits of the government's claim that Packwood breached without relying on any due process defect in the timing of the government's indictment. *Id.* at 1011–12. Other cases follow the same path. *See, e.g.*, *United States v. Gonzales*, 16 F.3d 985, 989–90 (9th Cir. 1993).

Whether decided in the district court or on appeal—and whether decided in favor of the government or not—each of these cases operates on an assumption that is squarely inconsistent with Judge Sanchez's proposed rule. The past practice of courts in this circuit has been to allow the government to move first and to judicially consider the merits of the government's decisions later. Nowhere do any of these cases indicate that such a practice might on its own constitute a due process violation. That, if nothing else, speaks to the novelty of the rule Judge Sanchez proposes.

Judge Sanchez concedes that his approach would create a new rule and therefore alter the status quo. But he suggests that his is "the only outcome consistent with our precedents." That's not quite right either. In *United States v. Plascencia–Orozco*, this court was presented with an argument that "the government must secure a judicial finding of breach *before* indicting a defendant on charges that would otherwise be barred by his plea agreement." 852 F.3d at 920. *Plascencia* rejected that argument, and Judge Sanchez's position is particularly difficult to square with its reasoning.

In *Plascencia*, the defendant had previously entered into a plea agreement resolving an earlier prosecution against him in which the government dismissed and promised not to bring charges of illegal reentry, identity theft, and drug possession unless he breached the plea agreement or unlawfully returned to the United States. *Id.* at 915. After the defendant again attempted to unlawfully enter the United

States, the government brought the previously dropped charges against him. *Id*. The government contended that Plascencia's own breaches of the plea agreement absolved it of any responsibility to abide by its prior promise not to prosecute. *Id*. at 918. It did not seek a judicial determination of that theory before reindicting. *Id.* On appeal, the defendant asked the court to recognize a new due process requirement that a judicial determination of breach by the defendant is required before the government may reindict. *Id.* at 920.

Our court "decline[d] Plascencia's invitation," reasoning that:

> We have also never expressly addressed whether the government must seek a judicial finding of breach before indicting a defendant on charges barred by a plea agreement. But again, we think that the procedures outlined above—a motion to dismiss under Rule 12(b), with an evidentiary hearing to resolve disputed factual issues and a burden of proof that rests squarely on the government—are sufficient to protect a defendant's due-process right to enforce the terms of his plea agreement. Plascencia has pointed us to no statute or case law requiring the government to seek a preindictment finding of breach, and we decline to recognize such a requirement here.

*Id.* at 921–22 (footnotes omitted).

While it is true that in *Plascencia*, "the government went out of its way to request a judicial finding that [the] charges

were not barred by Plascencia's 2008 plea agreement because Plascencia had breached the agreement," *id.* at 922, it only did so *after* disregarding the agreement's terms by indicting him, *id.* at 918. Our court did not consider the government's preemptive indictment a problem because "the government was under no obligation to seek th[e] finding in the first place," so "its decision to seek the finding after reinstating the 2008 charges … could not have been reversible error." *Id.* at 922. *Plascencia*'s bottom line was clear enough: though the government "must proffer sufficient evidence to establish [defendant's] breach by a preponderance of the evidence," "[t]he matter need not be … decided before" the government acts. *Id.* at 922–23.

Though *Plascencia* involved an indictment, not sentencing, its reasoning applies with full force here. Judge Sanchez dismisses *Plascencia* and *Packwood* because they involved the government's indictment decisions, not its sentencing recommendations. First off, it is not true, as Judge Sanchez charges, that all the cases I cite involve indictments. *Roberts*, for example, is a sentencing case. *See* 5 F.3d at 367. And in any event, Judge Sanchez undercuts his assertion that indictment cases are irrelevant by citing as relevant out-of-circuit authority where the government's departure from a plea agreement occurred when it brought a new indictment, not when it made sentencing recommendations. *See United States v. Gonzalez-Sanchez*, 825 F.2d 572, 578 (1st Cir. 1987).

Even more damaging to Judge Sanchez's cause is that he provides no convincing basis for treating indictment cases any differently than sentencing cases. After all, as Judge Sanchez recognizes, the interests sought to be protected in both sentencing and indictment cases stem from the same place: due process. He suggests that the process afforded

defendants by *Plascencia* was sufficient for indictments but not for sentencing because in sentencing cases, "the defense has virtually no opportunity to prevent the government from filing a sentencing memorandum or advancing arguments at a sentencing hearing that materially deviate from the terms of a plea agreement."  But that attempt to distinguish *Plascencia* and *Packwood* ignores that, in the indictment context, the government has already, to use Judge Sanchez's word, *unilaterally* breached the plea agreement by bringing the indictment.  And it's simply not true that, in the sentencing context, "once the government has acted unilaterally, … the harm to the defendant cannot be undone." Of course it can.  Under Judge Vratil's and my view, if the government is wrong about whether the defendant breached, its actions will be undone by the district court who must determine whether the government or defendant breached the terms of the plea agreement.

Ordinary contract law principles do not require a party to seek a judicial determination that one party has materially breached before the other party is relieved of its duty to comply.  As every first-year law student learns in contracts class, a contracting party's material breach excuses another party's duty to perform their own obligations under a contract, whether or not a court has recognized the breaching party's non-performance.  *E.g.*, 15 Williston on Contracts § 44:46 (4th ed.) ("[A] material breach allows the other party to treat the contract as discharged."); Restatement (Second) of Contracts § 237 (1981) ("[I]t is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time.").  While the existence or materiality of such a breach may create a litigable issue

that a court will be asked to consider *after* the parties have come to loggerheads, it is the *breach* itself—not the court's say-so—that excuses the other party's performance, and a party who suffers a material breach is perfectly justified in its non-performance before hearing from the court.

For example, a contractor need not go to court before refusing to build the deck that a homeowner promised to pay him in advance to build. His obligation to build the deck is discharged by the homeowner's lack of prepayment, and should he find himself in court about the matter afterward, I hazard to guess that the court will not find him at fault for recognizing and acting upon the homeowner's plain breach of contract without first running to court to seek a judicial ratification of that obvious fact.

So too here. When faced with what the government believes to be a defendant's breach of the plea bargain, ordinary contract principles counsel that the government ought to be free to treat its own obligations under the agreement as discharged. Those actions are, of course, subject to later scrutiny by the court, which may or may not agree with the government's view. That is the risk the government runs by acting first—but not, as Judge Sanchez repeatedly suggests, unilaterally, because the question of the defendant's breach will ultimately be decided by the court. It should thus come as no surprise that *Packwood*, the case cited by Judge Sanchez, counsels only that breach must be determined by a court, not that it must be determined *first* by a court. 848 F.2d at 1011–12.[2]

---

[2] Judge Sanchez also cites *United States v. Arnett*, 628 F.2d 1162 (9th Cir. 1979). But *Arnett* similarly only recounts the broad rule that

To support his view that any preemptive action on the government's part is *per se* a breach of the plea agreement requiring vacatur, Judge Sanchez relies on three cases: *Santobello v. New York*, 404 U.S. 257 (1971), *United States v. Mondragon*, 228 F.3d 978 (9th Cir. 2000), and *United States v. Alcala-Sanchez*, 666 F.3d 571 (9th Cir. 2012). But none of these cases involve action of the government premised on a claim that the defendant had previously breached his plea agreement, and therefore none of them supports Judge Sanchez's proposed rule.

In *Santobello*, for example, the government recommended the court impose the one-year maximum sentence despite a prior plea agreement that it would make no sentencing recommendation at all. 404 U.S. at 259. The government pointed to no conduct of Santobello's to justify its deviation from the agreement. In fact, it offered no reason at all for its failure to abide by the agreement, which was apparently a simple inadvertence. The prosecutor who signed the agreement was not the prosecutor who recommended the sentence at the hearing, and the two had not communicated about the details of the defendant's plea. *Id.* The prosecutor handling the sentencing hearing was therefore entirely unaware that his recommendation breached the agreement. The government's breach in *Santobello* was both obvious and unprompted by any prior act of the defendant. It required no adjudication of any disputed factual issues that might have conceivably justified the government's actions. *Santobello* thus has nothing

---

disputes over the terms of plea agreements must be decided by the district court. *Id*. at 1164. *Arnett* says nothing about the government's obligations after a breach by the defendant, for the obvious reason that there was no allegation in *Arnett* that the defendant ever breached.

useful to tell us about this case, in which the government asserts that the defendant's own breach justified the government's responsive departure from the plea agreement.

*Alcala-Sanchez* is even less helpful. There, unlike in this case (and unlike even *Santobello*), "the government admitted its mistake" at the sentencing hearing "and recommended the agreed-upon sentence before the district court sentenced Alcala." 666 F.3d at 576. It is difficult to imagine a situation less in need of an affirmative judicial determination of a claimed breach than when the government acknowledges its mistake and retracts its wrongful recommendation.

*United States v. Mondragon*, 228 F.3d 978 (9th Cir. 2000), is similarly off-point. In *Mondragon*, the government promised in a plea agreement not to make any recommendation regarding sentencing. *Id*. at 979. Without any suggestion of breach by the defendant, the government failed to abide by that agreement. So rather than involving an initial breach by the defendant, *Mondragon* is a case presenting an initial breach by the government, and it is therefore unlike this case.

In all three of Judge Sanchez's cases, holdings against the government were premised on an acknowledgement that *the government*, and not the defendant, had breached the agreement. Whether that breach was determined by a court or admitted to by the government is ultimately unimportant. What matters is a conclusion that the government breached. From the existence of such a breach, the court found a due process violation. But here, if the defendant breached first, the government was under no obligation to hold up its end of the bargain. The government only breached if Livar didn't breach first.

To summarize, our court has long blessed the government's "act first, justify later" approach, so long as its determination that the defendant has breached is subsequently ratified by a court. When squarely faced with a due-process challenge to that approach in *Plascencia*, we squarely rejected it. Judge Sanchez would abandon that longstanding approach without so much as a case in support or a word in retrospect.

Given Judge Sanchez's sharp break with practice and precedent, one might expect a fulsome explanation of the important procedural protections offered by the new rule he proposes. None is forthcoming. While he extols the benefits of "[r]equiring a judicial determination" in a general sense, Judge Sanchez does nothing to explain why due process requires that that judicial determination must occur *first*, and it is unclear what the reason might be. Of course, due process with respect to plea agreements requires preventing the government from baiting a defendant into a plea agreement and then unilaterally changing the terms of that agreement. *Santobello*, 404 U.S. at 262. And Judge Sanchez is certainly correct to note that "a judicial determination also facilitates appellate review" of claims of prosecutorial malfeasance. But our court has reasonably understood this to be satisfied so long as the sentencing court can intervene and provide remedies in the unlikely event that the government attempted such a ruse. *E.g. Plascencia*, 852 F.3d at 921–22; *see also Buckley v. Terhune*, 441 F.3d 688, 691–92, 694–95 (9th Cir. 2006) (en banc).

The defendant gains no obvious benefit from Judge Sanchez's proposed rule that would require the government to ask for permission instead of ratification. District courts are equally capable of evaluating the government's breach claims no matter whether this court requires a hearing before

the government acts on the breach or whether the issue is considered at a hearing after the government takes actions inconsistent with the agreement. While the latter is certainly riskier for the government, the court in either circumstance retains the final authority to say (1) whether the defendant breached his obligations under the plea agreement and (2) what that means for the prosecution's case. The upshot for Livar's case here is that, even now, if this case were properly remanded, the district court is readily capable of making a finding as to whether Livar breached and factoring that finding into a new sentencing determination.

Notwithstanding Judge Sanchez's frequent characterization of the government's actions here as "unilateral," it is ultimately the court's final determination on the breach question, not the government's, that matters.[3] And because that is true, the government is no more able to sneak a wrongful breach by the court—even assuming it had the intent to do so—just because the court collapses the required hearing into the sentencing hearing instead of holding an earlier hearing devoted solely to determining whether the defendant breached the plea agreement. Judge Sanchez provides no practical reason why this court's longstanding interpretation of what due process requires is not satisfied by allowing the district court to make the

---

[3] Judge Sanchez accuses me of advocating for a rule by which "an *intentional* breach by the government could be excused so long as the government feels justified by the defendant's conduct." That is not my rule. The question is not whether the "government *feels* justified," but whether a *court* determines that the government *was* justified in departing from the plea agreement. The majority's disagreement with Judge Sanchez is simply whether the district court must make that determination before the government departs from the plea agreement or whether, as is the contractual norm, it may do so after.

required judicial determination at a hearing occurring after the government acts.

Judge Sanchez defends the rule he proposes by insisting it is the same rule applied by five other circuits that have addressed the issue.  Wrong again.  All but one of the circuits invoked by Judge Sanchez in fact require only *a* judicial determination of a defendant's breach if the defendant challenges the government's determination that the breach occurred, not that the court must act first.  *See, e.g.*, *Gonzalez-Sanchez*, 825 F.2d at 578 (holding in the First Circuit that "[t]he factual determination whether the plea agreement has been breached lies with the trial judge," but apparently accepting as adequate a hearing on a defendant's motion to dismiss charges that the government brought notwithstanding its promise not to in the agreement); *United States v. Simmons*, 537 F.2d 1260, 1261–62 (4th Cir. 1976) (holding that "to set aside a judicially approved plea bargain, the prosecution may not act unilaterally but that … on adequate evidence, a judge must find that there has been a substantial breach," but considering that judicial finding as a procedural barrier only to the final act of sentencing, not to the government's attempts to avoid the agreement);[4] *United States v. Lezine*, 166 F.3d 895, 899–903 (7th Cir. 1999) (holding that "[w]hen the prosecution seeks to escape an obligation under a plea agreement on the grounds that the defendant has failed to meet some precondition, the defendant is entitled to an evidentiary hearing," but finding no due process violation where that hearing occurred on a

---

[4] *See also United States v. Gerant*, 995 F.2d 505, 508 (4th Cir. 1993) (holding government's refusal to comply with non-prosecution agreement justified where the district court later found that defendant breached the same); *United States v. Crowell*, 586 F.2d 1020, 1028 (4th Cir. 1978) (same).

motion filed after the government signaled its intent to breach);[5] *United States v. Cox*, 985 F.2d 427, 430 (8th Cir. 1993) (holding that "neither [a defendant] nor the government may unilaterally declare the plea agreement void; only the court has that authority," but taking no other position on the timing of such a determination except to note that the issue must be raised at some point during the district court proceedings); *but see United States v. Guzman*, 318 F.3d 1191, 1196 (10th Cir. 2003) ("[T]he government may not unilaterally declare a breach of a plea agreement; a court must hold a hearing and make a finding that the defendant breached the agreement before the government is released from its obligations under the agreement.").[6] In other words, nothing about the rule in four of those five circuits is

---

[5] *See also United States v. Ataya*, 864 F.2d 1324, 1330 n.9 (7th Cir. 1988) ("acknowledg[ing] that the due process clause does not require the 'judicial determination' to be made prior to" the government's decision not to comply with its end of the bargain).

[6] The Tenth Circuit, then, is the only circuit cited by Judge Sanchez that affirmatively supports his proposed rule. But even the Tenth Circuit's rule in *Guzman* was an innovation that was not required by *United States v. Calabrese*, the case it ostensibly applied. In *Calabrese*, the Tenth Circuit held that "one requisite safeguard of a defendant's rights is a judicial determination, based on adequate evidence, of a defendant's breach of a plea bargaining agreement." 645 F.2d 1379, 1390 (10th Cir. 1981). But *Calabrese* did not require the hearing to occur before the government's action. Indeed, in *Calabrese*, the trial court held a hearing only after the government refused to do what it had promised in the plea agreement. *Id.* at 1389. The court in *Calabrese* thought it sufficient that "[i]n th[at] case there was a judicial determination of breach." *Id.* at 1390. So even though *Guzman*, like Judge Sanchez would here, claims to have applied already established law, the panel there instead surreptitiously invented a novel rule that is actually inconsistent with the facts of *Calabrese* and, if followed in *Calabrese*, would have compelled the opposite of what the court in *Calabrese* actually held.

inconsistent with our circuit's ratification rule, which Judge Sanchez would reverse.

Looking beyond the circuits referenced by Judge Sanchez only reaffirms the underlying support for our circuit's rule.  In addition to four of the five circuits cited by Judge Sanchez, at least two others—the Second and Fifth Circuits—also permit the government to move first.  *See United States v. Brumer*, 528 F.3d 157, 159 (2d Cir. 2008) (affirming convictions where a hearing on the defendant's alleged breach occurred only after the government took action inconsistent with its obligations under the plea agreement); *United States v. Davis*, 393 F.3d 540, 545–47 (5th Cir. 2004) (affirming conviction over defendant's motion to dismiss an indictment brought in violation of the terms of a plea agreement because the government proved by a preponderance of the evidence that its decision was justified by defendant's prior breach).

The rule applied today by our court and the overwhelming majority of our sister circuits makes sense. Plea agreements are desirable because they benefit both the government, which conserves investigative and prosecutorial resources, and the offender, who can start sooner on the road to rehabilitation than if he went to trial. *Santobello*, 450 U.S. at 261.  Allowing courts to ratify a prior government determination of breach expedites the process and thereby furthers both interests.  In contrast, Judge Sanchez's rule would offer no marginal safeguard to due process over the ratification rule if the defendant disputes that he breached because—whether the court ultimately finds he did or did not breach—our rules regarding the proper remedies are clear.  Nor does his rule expand or enhance the remedies a defendant may elect—recission or

specific performance of the plea agreement—in the event the government did improperly breach.

## II. The Appropriate Remedy is to Remand to the District Court to Determine whether Livar Breached the Plea Agreement, and to Resentence Accordingly.

For the reasons explained above, I would require only *a* judicial determination of the government's claimed breach and would not condition the government's ability to act upon its first obtaining such a determination from the trial court. Even under this less demanding standard, however, Livar's current sentence does not pass muster.

Under *Santobello*, "a criminal defendant has a due process right to enforce the terms of his plea agreement." *Buckley*, 441 F.3d at 694. While this court has held that "an evidentiary hearing to resolve disputed factual issues [with] a burden of proof that rests squarely on the government" is enough to vindicate that right, *Plascencia*, 852 F.3d at 921, such process is sufficient only if the court actually considers and addresses the alleged breach by the defendant. If the government acts first to repudiate the plea agreement, the court must determine one way or another whether the defendant breached first. If the court defers ruling on the issue or otherwise equivocates on the government's claimed breach, then a hearing alone is insufficient. Without a ruling from the court, there is no sense in which the court has "ratified" the government's argument or voided its obligations under the agreement. Nor has the defendant been able to meaningfully "enforce the terms of his plea agreement," as due process requires. *Buckley*, 441 F.3d at 694.

That is unfortunately what happened here. In Livar's August 2022 plea agreement, the parties agreed to "jointly

recommend a sentence at the *middle* of the advisory guideline range, followed by a 5-year term of supervised release ….” Two months later, Livar placed a phone call to a social worker involved in his children's ongoing custody case, threatening him with violence upon Livar's release from prison. In the government's view, those threats constituted a crime and “relieved [it] of its obligations under th[e] agreement,” which were conditioned on the defendant not “breach[ing] the terms of th[e] agreement or commit[ing] any new criminal offenses between signing th[e] agreement and sentencing.” At the sentencing hearing, the government contended that Livar had “commit[ed] a new crime, … and therefore the [g]overnment [wa]s not in breach.”

Despite the government's argument, the district court's findings on Livar's breach were inconclusive. When first asked to determine whether Livar had breached the agreement, the district court signaled its intent to sentence at the high end of the sentencing range notwithstanding the plea agreement:

> Why don't you argue for a sentence in the mid-level range. This is just advisory. I go below guidelines not infrequently; I go above guidelines every now and then. You stick with arguing at the mid-level range so that there is no question that you are abiding by your agreement. From everything that I have read, I'm either going to go at the high end of the range … or maybe even above it, because I'm very disturbed by that phone call.

When pressed further, the district court explicitly declared that it was “not making a finding one way or the

other whether the defendant breached his plea agreement." It finally noted that it "d[id] not believe that the Government ha[d] in any way breached the plea agreement," after which the government confirmed its intent "to abide by [its] recommendation in the plea agreement, even though [it] believe[d] the defendant … breached the plea."  As promised, the court then sentenced Livar to thirty months imprisonment—the high end of the sentencing range.  But the district court never resolved whether Livar breached the plea agreement; indeed, it expressly declined to do so.

Though I disagree with Judge Sanchez's conclusion that the government *per se* breaches the agreement by moving first, I nevertheless conclude that the district court here erred by never making a finding as to whether Livar breached first. I would therefore vacate Livar's sentence and remand to give the district court an opportunity to make that required finding.[7]

---

[7] In cases like these, where the relevant facts are not disputed, this court could, of course, make the factual finding itself. *See, e.g.*, *United States v. Gonzales*, 16 F.3d 985, 990–91 (9th Cir. 1993) (recognizing "the district court's role as factfinder in cases of alleged plea agreement breaches" but nevertheless affirming the defendant's appeal on the merits because "the [government's] breach [wa]s clear").  And in Livar's case, I do not imagine it would be all that difficult to do so.  Oregon law makes it a crime to "subject[] another to alarm by conveying a telephonic … threat to inflict serious physical injury on that person …."  Or. Rev. Stat. § 166.065(c).  In his sentencing memorandum, Livar did not dispute that the phone call occurred, nor did he appear to dispute the substance of the call, arguing only that "[w]hile the government can argue that additional facts should be considered by the [c]ourt …, the decision … is left to the [c]ourt as sentencing judge."  It is thus not particularly difficult for me to conclude on appeal that Livar's conduct—which, again, is apparently undisputed—violates Oregon's prohibition on

If, on remand, the district court concluded that Livar did *not* breach his obligation under the plea agreement not to commit a new crime, I agree with my panel colleagues that under circuit precedent, it is irrelevant that the court signaled its intent to sentence the defendant at the high end of the range notwithstanding the government's recommendation. *See Alcala-Sanchez*, 666 F.3d at 575 (quoting *Gunn v. Ignacio*, 263 F.3d 965, 969–70 (9th Cir. 2001) ("It does not matter … 'that the statements or arguments the prosecutor makes in breach of the agreement do not influence the sentencing judge.'")). Nor is the government's eventual compliance with the plea deal sufficient to save the sentence in the face of its earlier equivocation. In *Alcala-Sanchez*, even though "the government admitted its mistake and recommended the agreed-upon sentence," the court "conclude[d] that the government's later actions did not cure its earlier breach" because Alcala-Sanchez had already "lost the benefit of his bargain that contemplated that the government would present a united front with him in" sentencing. *Id.* at 576.

Therefore, if on remand the district court concluded that Livar did not breach his end of the bargain—thereby concluding that the government's repudiation of the agreement was without excuse—Livar would be entitled to receive "the benefit of his bargain." *Id*. The benefit of his

---

telephonic harassment in section 166.065(c). Our court is certainly not *required* to make any finding as to Livar's breach, however, and given that this case must be remanded for resentencing anyway, I would also remand the question of Livar's breach to the district court for consideration in the first instance. But the fact that there is ample support for the conclusion that Livar breached first further underscores the wastefulness and unnecessity of the novel rule proposed by Judge Sanchez in this case.

bargain requires specific performance of the plea agreement, and the court would need to reassign the case "for resentencing before a different judge" to which the parties could "present a united front." *Id.* at 575.

But if, as is *much* more likely in this case, the district court on remand concluded that Livar did breach his end of the bargain, then the government would be entirely justified if it decided to disregard its obligations under the plea agreement and seek a higher sentence. Indeed, under such circumstances, the express terms of the plea agreement make it clear that the government "is relieved of its obligations under th[e] agreement." In that case, Livar would not deserve "the benefit of his bargain," *id.* at 576, and the original district court could, without violating any of Livar's due process rights, proceed to resentence Livar with the benefit of the government's longer sentencing recommendation. Indeed, the district court could properly resentence Livar to a higher sentence than he received the first time around, which again only highlights the improper and perverse incentives created by Judge Sanchez's proposed rule.

\* \* \*

I therefore concur in the judgment insofar as it vacates Livar's sentence, but I respectfully dissent from that portion of the judgment which remands Livar's case for resentencing while specifically requiring the district court to sentence Livar to an imprisonment term of time-served and five years' supervised release.

SANCHEZ, Circuit Judge, concurring in part and dissenting in part:

This matter should have been straightforward. In exchange for Adam Livar's guilty plea and promise to refrain from committing any new criminal offense before sentencing, the government agreed to join in recommending a sentence at the mid-range of the sentencing guidelines. The parties then disagreed whether Livar's recorded jail phone conversation constituted a breach of the plea agreement. Rather than let the district court resolve this factual dispute, the government decided that question for itself and filed a sentencing recommendation which advocated for a sentence at the high end of the guidelines range and proposed to double the length of the agreed-upon term of supervised release. Under clear Supreme Court and circuit precedent, the government's failure to abide by the strict terms of the plea agreement constitutes a breach of the agreement and requires that we vacate the sentence and remand.[1] *See Santobello v. New York*, 404 U.S. 257, 262 (1971).

My colleagues and I agree that the government may not unilaterally declare a breach and withdraw from its obligations under the plea agreement without a judicial determination that the defendant did, in fact, breach the agreement. But in my view, the government acted unilaterally the moment it advocated for more severe punishment and destroyed the benefit of Livar's bargain—presenting a "united front" with the government in jointly

---

[1] As explained below, I agree with Judge Vratil that the appropriate remedy is to remand with entry of judgment of time served and all other terms and conditions to remain the same as the original judgment.

recommending a mid-range sentence.  *See United States v. Alcala-Sanchez*, 666 F.3d 571, 575–76 (9th Cir. 2012).  My colleagues' conclusion that the government may breach first and ask for forgiveness later is antithetical to the due process principles underlying *Santobello* and the decisions of our court as well as several of our sister circuits.  It is also unnecessary.  There is little downside to requiring that the government file a motion seeking a judicial determination that a defendant has breached the plea agreement *before* it acts in a manner inconsistent with the agreement's terms, but substantial disruption and inefficiency awaits the path blessed by the decision here.  I fear that the muddled outcome today will not provide the guidance that is sorely needed in our circuit.

## I.

The Supreme Court has instructed that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello,* 404 U.S. at 262.  The government must be "held to the literal terms of the agreement." *United States v. Johnson*, 187 F.3d 1129, 1134 (9th Cir. 1999); *see United States v. Farias-Contreras*, 104 F.4th 22, 28 (9th Cir. 2024) (en banc).  Thus, our interpretation of a plea agreement "must secure the benefits promised [to the defendant] by the government in exchange for surrendering his right to trial." *United States v. Franco-Lopez*, 312 F.3d 984, 989 (9th Cir. 2002).  Requiring the government's strict compliance with the terms of the agreement is essential to plea bargaining "because it ensures that a defendant gets the benefit of his or her bargain—the presentation of a 'united front' to the court." *Alcala-Sanchez*, 666 F.3d at 575.

The Supreme Court elucidated these principles in *Santobello*. There, the defendant "bargained and negotiated for a particular plea in order to secure dismissal of more serious charges" as well as the government's promise "that no sentence recommendation would be made by the prosecutor." 404 U.S. at 262 (internal quotation marks omitted). At the sentencing hearing, a different prosecutor, "apparently ignorant of his colleague's commitment," recommended a maximum one-year sentence. *Id.* at 259. Even though the breach was inadvertent and the sentencing judge expressly stated he was not influenced by the prosecutor's arguments, the Supreme Court reversed, observing that even an inadvertent breach "does not lessen its impact." *Id.* at 262. And although the *Santobello* court had no cause to doubt the sentencing judge's statement that he was not influenced by the prosecutor's initial recommendation, "the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made" required reversal and remand to allow the defendant to withdraw from his plea or be resentenced before a different judge. *Id.* at 262–63. In other words, once the breach by the government occurs, the trial court cannot ratify or absolve the government of its actions by indicating it was not influenced by the government's conduct or concluding that the government acted in good faith. *Id.*

Two cases from our circuit reaffirm the seriousness with which we construe a government's obligations under a plea agreement. In *United States v. Mondragon*, the government agreed it would "make no recommendation regarding sentence" in exchange for the defendant's guilty plea. 228 F.3d 978, 979 (9th Cir. 2000). At sentencing, however, the prosecution was asked to respond to defense counsel's argument that the defendant's criminal history was "petty in

nature." *Id.* The prosecution "point[ed] out to the Court the serious nature of some of the listed offenses" in his criminal history and later argued it was justified in doing so under its ethical obligation to correct factual misstatements by defendant's counsel. *Id.* at 979–80. Although the district court found that the prosecution's comments were not related to sentencing, we vacated the sentence, observing:

> It is of no consequence that the district judge did not construe the prosecutor's statements as a "comment on the sentence" or a "recommendation with respect to sentencing," or that the statements may have had no effect upon the sentence. The harmless error rule does not apply when the government breaches a plea agreement. The integrity of our judicial system requires that the government strictly comply with its obligations under a plea agreement.

*Id.* at 981 (internal citations omitted).

Similarly in *Alcala-Sanchez,* the government filed a sentencing summary chart that recommended a total offense level and sentencing range far higher than the one established by the plea agreement. 666 F.3d at 573–74. At sentencing, the prosecutor apologized profusely for the mistake and made a sentencing recommendation consistent with the plea agreement. *Id*. at 574. The district court confirmed that the government meant to withdraw the sentencing summary chart and stand by the plea agreement, and it thus found that the government had not breached the plea agreement. *Id.* We held otherwise, concluding that "[b]ecause the district court clearly erred in determining that

the government did not breach the plea agreement," we must vacate the sentence and remand for resentencing before a different judge. *Id.* at 575, 577. We explained that "the government's later actions did not cure its earlier breach" because the defendant "lost the benefit of his bargain that contemplated that the government would present a united front with him in recommending a total offense level of 12 and a 33-month sentence." *Id.* at 576. That the district court ratified the government's efforts to mitigate the harm caused by its breach did not alter our conclusion that remand was required under *Santobello*. *Id.* at 577.

Strict compliance with the terms of a plea agreement is grounded in due process. Unlike traditional contracts, plea agreements implicate unique constitutional rights and "must be attended by adequate safeguards to insure the defendant what is reasonably due in the circumstances." *Santobello*, 404 U.S. at 262; *see Carnine v. United States,* 974 F.2d 924, 928 (7th Cir. 1992) ("Plea agreements . . . are unique contracts in which special due process concerns for fairness and the adequacy of procedural safeguards obtain." (quotation marks and citation omitted)). A defendant surrenders fundamental rights when entering a plea agreement with the government, including the right to a jury trial, *Duncan v. Louisiana*, 391 U.S. 145 (1968), to confront one's accusers, *Crawford v. Washington*, 541 U.S. 36 (2004), and to be convicted only upon proof of guilt beyond a reasonable doubt, *In re Winship*, 397 U.S. 358 (1970). "The government's inducement of the defendant's plea, and the consequent forfeiture of his constitutionally-guaranteed rights, requires that 'a promise or agreement of the prosecutor . . . must be fulfilled.'" *United States v. Whitney*, 673 F.3d 965, 974 (9th Cir. 2012) (quoting *Santobello*, 404 U.S. at 262); *United States v. Heredia*, 768 F.3d 1220, 1230

(9th Cir. 2014) ("The integrity of the criminal justice system depends upon the government's strict compliance with the terms of the plea agreements into which it freely enters.")

Given the importance of ensuring that the government's promises in a plea agreement be strictly observed, it makes little sense that an inadvertent breach by the government would require reversal under *Santobello*, but an *intentional* breach by the government could be excused so long as the government feels justified by the defendant's conduct. As I explain next, due process considerations do not allow the government to breach first and ask for absolution later.

## II.

### A.

When a dispute arises about the terms of the plea agreement or whether it has been breached, "[a] court must determine breach, with an evidentiary hearing if there are disputed issues of fact, and as a matter of law if the pleadings show no factual disputes." *United States v. Packwood*, 848 F.2d 1009, 1011 (9th Cir. 1988) (citing *United States v. Calabrese,* 645 F.2d 1379, 1390 (10th Cir. 1981)); *see United States v. Arnett*, 628 F.2d 1162, 1164 (9th Cir. 1979) ("Resolution of the good-faith disputes over the terms of [a plea] agreement should be made by the district court, to whom the plea was originally submitted, 'on the basis of adequate evidence.'" (quoting *United States v. Simmons*, 537 F.2d 1260, 1261 (4th Cir. 1976))).

Five of our sister circuits have concluded that the government cannot unilaterally determine whether the defendant has performed under the plea agreement. As the Tenth Circuit explains: "Under the law of this Circuit, '[i]f the pleadings reveal a factual dispute on the issue of breach

[of a plea agreement], the district court must hold a hearing to resolve the factual issues.'" *United States v. Guzman*, 318 F.3d 1191, 1196 (10th Cir. 2003) (quoting *Calabrese,* 645 F.2d at 1390) (alterations in original). "In other words, the government may not unilaterally declare a breach of a plea agreement; a court must hold a hearing and make a finding that the defendant breached the agreement before the government is released from its obligations under the agreement." *Id.* (citations omitted); *see Simmons*, 537 F.2d at 1261–62 ("There would be manifest impropriety in permitting the government, without satisfying a judge that the evidence proves that a defendant broke his promise, to escape from the obligation the government undertook in the plea bargain."); *United States v. Lezine*, 166 F.3d 895, 901 (7th Cir. 1999) ("When the prosecution seeks to escape an obligation under a plea agreement on the grounds that the defendant has failed to meet some precondition, the defendant is entitled to an evidentiary hearing."); *United States v. Cox*, 985 F.2d 427, 430 (8th Cir. 1993) ("Neither [defendant] nor the government may unilaterally declare the plea agreement void; only the court has that authority."); *United States v. Gonzalez-Sanchez*, 825 F.2d 572, 578 (1st Cir. 1987) ("The factual determination whether the plea agreement has been breached lies with the trial judge."). The determination whether the government or the defendant has breached the plea agreement resides with the district court in the first instance, not the government.

Requiring a judicial determination also facilitates appellate review of such claims where factual development by the district court is often vital. *See United States v. Henry*, 758 F.3d 427, 432 (D.C. Cir. 2014). Conversely, if the government is allowed to declare unilaterally that the defendant breached and acts contrary to its own obligations

under the plea agreement, that curtails our ability to meaningfully review the government's breach determination. *Id.*

Turning to this appeal, the parties disagreed whether Livar's recorded jail phone conversation constituted a breach of his obligation to accept responsibility for his offense or avoid committing any new crimes. Rather than present this factual dispute to the district court for judicial determination, the government decided that question for itself and filed a sentencing memorandum that departed substantially from the plea agreement. The government's sentencing memorandum advocated for a thirty-seven-month term and ten years of supervised release—adding ten months of incarceration and doubling the length of the proposed term of supervised release. At sentencing, the district court found that Livar had accepted responsibility but declined to make a finding as to Livar's alleged breach of the agreement. As the per curiam opinion concludes, the district court erred in sidestepping the question of Livar's alleged breach of the plea agreement. *See supra* 13. But the government's advocacy for more severe punishment in its sentencing memorandum also destroyed the benefit of Livar's bargain—presenting a "united front" with the government in recommending a mid-range sentence. *See Alcala-Sanchez*, 666 F.3d at 575–76. On this record, I have no difficulty in concluding that the government breached the literal terms of the plea agreement. *Id.*

## B.

This case presents a paradigmatic example of the government acting unilaterally to declare a breach and withdrawing from the plea agreement before a judicial determination can be made on that question. My colleagues

agree that the government cannot unilaterally withdraw from its obligations under the plea agreement, but they conclude that the government can make a sentencing recommendation that departs from the plea agreement so long as the district court later ratifies the government's conduct. This approach cannot be squared with our precedents applying *Santobello*.

Once the government fails to abide by the strict terms of the plea agreement, the interests of justice require that the sentence be vacated and remanded. *Santobello,* 404 U.S. at 262–63; *see Alcala-Sanchez,* 666 F.3d at 575–77. Even inadvertent or implicit departures by the government are sufficient to require vacatur of the sentence. *Alcala-Sanchez,* 666 F.3d at 577; *see Whitney*, 673 F.3d at 971; *see also Heredia*, 768 F.3d at 1231. And "it is of no consequence" that the district court believed the government acted in good faith or was unswayed by the government's sentencing recommendation. *See Mondragon*, 228 F.3d at 981 (rejecting all such "harmless error" analyses). Thus, the only way to preserve the "unique constitutional concerns involved in plea agreements" is to require a judicial determination of a defendant's breach *before* the government is relieved of its own responsibilities. *See United States v. Jackson*, 21 F.4th 1205, 1213 (9th Cir. 2022). Until the district court releases the government from the terms of the plea agreement, the government must scrupulously fulfill its promises.

Judge VanDyke contends that it is an accepted practice for the government to breach first and seek judicial ratification later, but the cases he cites for this proposition involved reindictments of a defendant—not the government's breach of a plea agreement during sentencing proceedings. Indictments involve their own due process protections that are not present at sentencing. In the context

of an indictment, "[a] criminal defendant has a due process right to enforce the terms of his plea agreement." *Buckley v. Terhune*, 441 F.3d 688, 694 (9th Cir. 2006) (en banc) (citing *Santobello*, 404 U.S. at 261–62). "If the government indicts a defendant on charges that the defendant believes are barred by a preexisting plea agreement, the defendant may move to dismiss those charges." *United States v. Plascencia-Orozco*, 852 F.3d 910, 920 (9th Cir. 2017). That is exactly what happened in *Packwood*, where the defendant moved to dismiss the indictment as barred by a preexisting plea agreement. 848 F.2d at 1010–11. Following a hearing, the district court dismissed the indictment after determining that the defendant had not breached the plea agreement. *Id.* at 1012. In *Plascencia-Orozco*, we concluded that the government was not required to seek a judicial finding of breach before reindicting the defendant because the established safeguards under a motion to dismiss "are sufficient to protect a defendant's due process rights to enforce the terms of his plea agreement." 852 F.3d at 921. We observed that the defendant had ample opportunity to file such a motion in the three years following his indictment, but did not do so. *Id.* at 920. The same cannot be said of sentencing proceedings. The defense has virtually no opportunity to prevent the government from filing a sentencing memorandum or advancing arguments at a sentencing hearing that materially deviate from the terms of a plea agreement, and once the government has acted unilaterally in this manner, the harm to the defendant cannot be undone. *See Mondragon*, 228 F.3d at 981.

Judge Vratil emphasizes that the plea agreement here did not *require* that the government seek a preliminary judicial determination of Livar's asserted breach, but our cases applying *Santobello* do not turn on that factor. We enforce

the terms of the plea agreement strictly against the government, not because the contract tells us to do so, but because the defendant has surrendered constitutionally-guaranteed rights in exchange for the benefits promised by the government.  *See Franco-Lopez*, 312 F.3d at 989. Whether Livar was indeed subject to a condition precedent under the terms of the agreement is a matter the district court must determine in the first instance, not after the government has decided that question for itself and vitiated the plea agreement by its conduct.

Finally, my colleagues' approach of allowing the government to breach first and seek judicial permission later will cause unnecessary disruption in the courts below.  Play out the scenario that began here.  Once the government filed its sentencing memorandum advocating more severe punishment for Livar, the die was cast.  If the district court then held an evidentiary hearing to determine whether Livar breached the agreement, and found that he had not, then we all agree that the government would be in breach of the plea agreement.  *See supra* 14; *supra* 23.  Because a defendant cannot be sentenced before the same district court in which the government is in breach of the plea agreement, the case must then be reassigned to a different judge for sentencing, starting the process over again.  *See Santobello*, 404 U.S. at 263; *Alcala-Sanchez*, 666 F.3d at 577.

On the other hand, there is no downside to requiring that the government file a motion seeking a judicial determination of the defendant's breach *before* it acts contrary to the plea agreement.  The district court must adjudicate the factual dispute by evidentiary hearing if necessary.  *See Plascencia–Orozco*, 852 F.3d at 921.  If the court finds that the defendant has failed to perform under the agreement, the government is then released of its obligations

and has a free hand in its sentencing recommendations. But if the defendant is found to have performed, then the same district court may proceed to sentencing and the government is held to the strict terms of the agreement.

The contention that a government breach may be judicially ratified after-the-fact is contradicted by our precedents, due process, and practical considerations. In my view, the only outcome consistent with our precedents is for the government to seek a judicial determination of a defendant's alleged breach before it may be relieved of its obligations under a plea agreement.

## III.

A majority of our Court concludes that the proper remedy in this matter is to remand with instructions to vacate the prior judgment and to enter a new judgment of time served with all other terms and conditions, including the five-year term of supervised release, to remain the same as the original judgment. I write separately to explain why that result is warranted under these circumstances.

Under 28 U.S.C. § 2106, we have "broad authority to 'modify, vacate, set aside or reverse' an order of a district court," and "direct such further action on remand 'as may be just under the circumstances.'" *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 661 (1978) (quoting 28 U.S.C. § 2106). Ordinarily, when the government breaches a plea agreement, we vacate the sentence and remand for resentencing before a different judge "to give [the defendant] the benefit of his bargain, specific performance of the plea agreement." *Alcala-Sanchez,* 666 F.3d at 577 (citing *Santobello*, 404 U.S. at 263).

Here, however, remanding for resentencing would not provide Livar the benefit of his bargain because he has already served beyond the term of incarceration recommended by the plea agreement and he has been sentenced to the statutory minimum term of five years of supervised release. *See* 18 U.S.C. § 3583(k). Resentencing would not provide Livar an effective remedy for the government's breach, and could expose him to a more severe sentence. For these reasons, Livar's counsel requested that we vacate the judgment and modify Livar's sentence to time served with all other terms and conditions to remain the same as the original judgment. Under these circumstances, the interests of justice are best served by adopting this approach.